STATE of Tennessee, Appellant,

v.

Jerrell C. LIVINGSTON.

STATE of Tennessee, Appellee,

v.

Steve BUNDY, Appellant.

STATE of Tennessee, Appellee,

v.

Johnny R. TILLEY, Appellant.

STATE of Tennessee, Appellee,

v.

David JOHNSON, Appellant.

Supreme Court of Tennessee, at Nashville.

Sept. 5, 1995.

Charles W. Burson, Attorney General & Reporter, Merrilyn Feirman, C. Mark Fowler, Assistant Attorneys General, and Clinton J. Morgan, Special Assistant Attorney General, Nashville, for the State.

Michael E. Terry, Nashville, for Appellee Livingston.

Thomas Jay Norman, Nashville, for Appellant Bundy.

Richard W. DeBerry, Assistant District Public Defender, Camden, for Appellant Tilley.

Charles M. Corn, District Public Defender, Cleveland, for Appellant Johnson.

## OPINION

CHARLES H. O'BRIEN, Special Justice and BIRCH, Justice.

■ We accepted the application for review filed pursuant to Rule 11, Tenn.R.App. P., in these four cases in order to determine whether the fresh-complaint doctrine recently modified in *State v. Kendricks*[1] applies in cases wherein a child is the victim of abuse. For the reasons below appearing, we hold that the fresh-complaint doctrine does not apply in such cases.

As a related issue, one of the cases under submission (Livingston) presents an opportunity for us to clarify the circumstances under which statements made by a child victim of abuse to a physician are admissible under Rule 803(4), Tenn.R.Evid.

In *Kendricks*, this Court, in clarifying the application of the fresh-complaint doctrine to adult victims, held that the fact of the complaint—but not the details—is admissible during the State's case-in-chief. Attempts to discredit the victim may cause the details of the complaint to be admissible. *Kendricks* did not alter the rules regarding the admissibility of "prior consistent statements" or an "excited utterance," which remain admissible under separate requirements.

In *Kendricks*, we found that the fresh-complaint doctrine evolved from an expectation that a rape victim would make immediate outcry. Even though the validity of this expectation is flawed, the expectation persists. Thus, in *Kendricks*, we reluctantly retained the fresh-complaint doctrine despite ever-increasing data suggesting its obsolescence. We said:

We would certainly prefer to abolish the doctrine in its entirety, given its genesis in the profoundly sexist expectation that female victims of sexual crimes should respond in a prescribed manner or risk losing credibility. Even though psychologists have proved that victims respond to sexual attacks in no prescribed way, abolition of the doctrine would strip the victim of one of the few methods to rebut the expectation of outcry, now deeply rooted in our culture. So until the "presumption" that the victim's testimony is a fabrication disappears, we must retain the doctrine of "fresh complaint," at least as we have today modified it.

It appears that most courts which have discussed the application of the fresh-complaint doctrine to child victims have assumed that the doctrine applies to child victims of sexual abuse as it does to adult victims. *See, e.g., Commonwealth v. Fleury*, 417 Mass. 810, 632 N.E.2d 1230 (1994); *Greenway v. State*, 626 P.2d 1060 (Alaska 1980); *State v. Hall*, 88 Idaho 117, 397 P.2d 261 (1964); *Woods v. State*, 233 Ind. 320, 119 N.E.2d 558 (1954); *State v. Calor*, 585 A.2d 1385 (Me. 1991); *People v. Lawson*, 34 Mich.App. 620, 192 N.W.2d 60 (1971); *State v. Daniels*, 222 Neb. 850, 388 N.W.2d 446 (1986).[2]

However, those courts applying the doctrine to child sexual abuse cases have recognized that

> [t]he cases involving child sexual abuse constitute a factually distinct branch of the fresh complaint doctrine that gives special consideration to the natural fear, ignorance, and susceptibility to intimidations that is unique to a young child's make-up.

*Fleury*, 632 N.E.2d at 1233 (*citing Commonwealth v. Amirault*, 404 Mass. 221, 535 N.E.2d 193, 199 (1989)).

Retention of the fresh-complaint doctrine in cases involving adult victims of sexual offenses furnishes no justification for extending the rule to cases involving child victims.

---

1. 891 S.W.2d 597 (Tenn.1994).

2. It should be noted, in this regard, that some states have "hearsay exception" statutes or rules which allow statements made by child victims to third parties to be admitted. *See State v. Blackburn*, 643 A.2d 224 (Vt.1993); *People v. Guajar-*

*do*, 262 Ill.App.3d 747, 201 Ill.Dec. 431, 636 N.E.2d 863 (1994); *State v. Free*, 643 So.2d 767 (La.Ct.App.1994); *See also, Bermudez v. State*, 878 S.W.2d 227, 228–29 (Tex.App.1994) ("outcry testimony" admitted pursuant to Code of Criminal Procedure as substantive evidence).

The expectation that "normal" women will complain after a sexual offense, if ever applicable to anyone, is certainly not applicable to child victims of sexual offenses. As noted by the California Supreme Court in a recent case limiting the fresh-complaint doctrine:

> [c]hild victims, in particular, commonly are reluctant to report such incidents and delay in doing so, or fail to provide a full report. Frequently, the child victim is unaware of the wrongful nature of the conduct or that what has occurred is not "normal." The victim also often experiences feelings of confusion and guilt, the desire to forget the incident, and the fear of not being believed, and in many instances may remain silent as a result of intimidation by the abuser.

*People v. Brown,* 8 Cal.4th 746, 35 Cal. Rptr.2d 407, 414, 883 P.2d 949, 956 (1994).

Further, unlike the presumptions regarding adult victims, juries do not necessarily presume that children fabricate, nor do they presume that a child will complain immediately. Having reluctantly retained the doctrine of fresh-complaint in the face of its many shortcomings in cases involving adult victims, we cannot reach the same result for child victims. The historic premises which supported our retention of the rule in adult victim cases simply do not support the application of the doctrine in child victim cases.

■ Further, we observe that evidence in the nature of fresh-complaint may be admissible as substantive evidence if it satisfies some hearsay exception[3] and as corroborative evidence if it satisfies the prior consistent statement rule.

We conclude, therefore, that no acceptable basis exists for stretching the fresh-complaint doctrine to the extent that it is applicable to cases involving child victims. Consequently, we hold that in cases where the victim is a child, neither the fact of the complaint nor the details of the complaint to a third party is admissible under the fresh-complaint doctrine.

## JERRELL C. LIVINGSTON

■ A Davidson County jury convicted Jerrell C. Livingston, the defendant, of three counts of aggravated rape. The trial court imposed a Range I sentence of 20 years on each count, and ordered the sentences to be served consecutively for an effective sentence of 40 years.

In this case, the six-year-old victim confided to a schoolmate that she was having sexual encounters with her father. The schoolmate told his mother. She relayed the information to the victim's teacher; the teacher notified Faye Stewart, the school guidance counselor. The Court of Criminal Appeals described Stewart's interaction with the victim in the following manner:

> Ms. Stewart, who had some training in handling problems such as this, questioned the victim about the incident. Over the objections of the defendant at trial, she testified that the victim said, "I sucked my dad and we do this a lot.... This is our secret and I'm not supposed to tell anyone." The victim demonstrated on anatomically correct dolls and, at the counselor's request, showed how she performed the act by use of a "Blo Pop" candy. Upon further questioning, the victim was able to provide some rather graphic detail of the incidents. On each occasion, the act involved the victim performing fellatio at the direction of the defendant. Consistent with a pre-established policy, Ms. Stewart reported the incident to the school's principal and the Department of Human Services.

The Court of Criminal Appeals held that Stewart's testimony concerning the victim's sexual activity with her father did not qualify for admission as fresh-complaint evidence. Under the rule announced today, we reach the same conclusion.

■ In a second issue, the State contends that the Court of Criminal Appeals incorrectly construed Rule 803(4), Tenn.R.Evid., in excluding the testimony of the physician who examined the victim. Rule 803(4) provides,

---

3. For example: excited utterance, statement of existing mental, emotional, or physical condition, or statement for purposes of medical diagnosis and treatment.

as an exception to the Rule against hearsay, for the admission of:

Statements made for purposes of medical diagnosis and treatment describing medical history; past or present symptoms, pain, or sensations; or the inception of general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis and treatment.

Sara Hassell, M.D., a pediatric resident working at the Nashville General Hospital under the supervision of the Vanderbilt School of Medicine Residency Program, examined the victim. Although the results of the physical examination were inconclusive with regard to sexual abuse, the victim demonstrated on anatomically accurate dolls the sexual conduct in which she and the defendant participated.

The Court of Criminal Appeals found that the questions and answers relating to intrusion in any orifice were reasonably pertinent to medical diagnosis and treatment. Included, however, in Hassell's testimony was the following dialogue with the victim:

Q. Did you get mad when he made you do that?

A. No. I was glad and he was happy.

Q. Why were you glad?

A. Because I liked doing it, but the school won't let me do it anymore.

Q. Why did you like doing it?

A. Because it was fun.

\* \* \* \* \* \*

Q. What does he say?

A. Go faster, go faster, you'll make me feel good.

The Court of Criminal Appeals found that the above-quoted testimony did not meet the purposes or requirements of Rule 803(4) and concluded that its admission was, therefore, error.

■ The rationale for the medical diagnosis and treatment hearsay exception is that such declarations are deemed reliable because the declarant is motivated to tell the truth; that is, the declarant makes the statements for the ultimate purpose of receiving proper diagnosis and treatment. Generally,

(1) the statement must be made for medical diagnosis *and* treatment; (2) the statement may include extensive information about symptoms, pain, or sensation; and (3) the statement is admissible only "insofar as reasonably pertinent to diagnosis and treatment." N. Cohen et al., Tennessee Law of Evidence §§ 803(4).1–803(4).4 (2d ed.1990).

■ The critical issue here is whether statements concerning *feelings* about the abuse, statements *identifying* the abuser, and other details not usually related to traditional medical diagnosis and treatment nevertheless fall within the scope of Rule 803(4). While this Court has not addressed this issue, the Court of Criminal Appeals has. In *State v. Rucker,* the court noted that generally "the name and identity of the perpetrator is not considered 'reasonably pertinent to diagnosis and treatment.'" 847 S.W.2d 512, 518 (Tenn.Crim.App.1992). However, "the name or identity of the perpetrator is 'reasonably pertinent to diagnosis and treatment' in child sexual abuse prosecutions when the perpetrator is a member of the victim's immediate household." *Id.* (citations omitted).

The *Rucker* Court relied extensively on *United States v. Renville,* 779 F.2d 430 (8th Cir.1985), the leading case on Fed.R.Evid. 803(4). While the federal rule differs from the Tennessee rule in that the federal rule admits statements if made for purposes of medical diagnosis *or* treatment, in all other respects, the rules are identical. Finding that child abuse involves emotional and psychological, as well as physical, injury and that the physician has an obligation to prevent the child from being returned to the abuser, the Eighth Circuit held that statements which identify a household member as the abuser are reasonably pertinent to medical treatment or diagnosis.

■ The Eighth Circuit emphasized, however, that there must be "sufficient indicia of the declarant's proper motivation to ensure the trustworthiness of her statements to the testifying physician." 779 F.2d at 439. Such a situation would exist where the physician "makes clear to the victim that the inquiry into the identity of the abuser is important to diagnosis and treatment, and the victim manifests such an understanding." *Id.*

■ We adopt the reasoning of the *Rucker* Court and find that statements made to a physician identifying a perpetrator who is a member of the child's household may be reasonably pertinent to proper diagnosis and treatment of emotional and psychological injury.[4]

In this case, identity is not a "primary" issue,[5] given the victim's testimony. The questionable testimony consists of the above-quoted statements expressing feelings about the abuse. The State concedes that this testimony was not reasonably related to medical diagnosis and treatment. We agree. Accordingly, the testimony should have been excluded.

The Court of Criminal Appeals reversed the convictions based upon the cumulative effect of the inadmissible testimony and remanded the cause for a new trial. We affirm its judgment.

## STEVE BUNDY

The defendant, Steve Bundy, was convicted in the Criminal Court for Wilson County of the aggravated rape of his ten-year-old step-daughter and the sexual battery of a teenaged step-daughter. The trial court imposed a fifteen-year sentence for aggravated rape and a one-year sentence for sexual battery.

■ The evidence at issue on this appeal is the admission, over objection by the defendant, of an audiotape. The tape relates solely to his conduct with the ten-year-old. At trial, the ten-year-old victim testified that the defendant had touched her in the wrong places and that he had placed his fingers inside of her. After one episode she wanted to tell her mother but she was unable to do so because they were in a hurry to get to school. At school, however, she reported the defendant's conduct to her teacher. The teacher summoned Angela Dozier, a Child Protective Services employee in the Department of Human Services, to whom the child related the events. The teacher testified under the fresh-complaint doctrine about the child's statements to her. Dozier also testified; during her testimony the audiotape of her conversation with the child was played. The audiotape was admitted under the fresh-complaint rule; the jury was instructed that it was not substantive evidence. The audiotape contains explicit statements made by the victim about the sexual encounter. Specifically, she stated: (1) abuse occurred during both the day and night; (2) the defendant would request her to remove her clothing and he would pull down his pants; (3) the defendant put his "private part" into her "private part"; (4) the defendant did not want her to tell her mother; and (5) she thought that the defendant was afraid her mother would leave him were she to tell her mother about the abuse.

At trial, the defendant did not object to the testimony of the teacher or to the testimony of Dozier. However, he did object to the jury hearing the audiotape of the interview between the child and Dozier. In his motion for new trial, the defendant challenged the recording as a denial of his right to confrontation, since it had been made outside the defendant's presence, contained leading questions, and included hearsay statements made by the victim. In the Court of Criminal Appeals, the defendant raised issues (1) whether the Tennessee Rules of Evidence abrogated the fresh-complaint doctrine,[6] and (2) whether the audiotape was inadmissible because (a) Dozier was not the first person to talk to the victim, (b) the tape was used substantively, (c) the victim had listened to the tape before trial, and (d) her statements on the tape were irrelevant. The Court of Criminal Appeals held that the fresh-complaint issue was waived.

We find that the defendant did not waive his objection to the audiotape. Clearly, he objected at every opportunity, and the thrust of his objection was his inability to cross-examine the audiotape. Under the rule an-

---

4. In order to properly diagnose and treat the child, circumstances may suggest that it is equally important to discover the identity of the perpetrator without regard to residence. We do not decide this issue here.

5. We acknowledge, however, that identity is an ultimate issue in every criminal case.

6. The abrogation issue was resolved in *Kendricks*. *State v. Kendricks*, 891 S.W.2d 597 (Tenn.1994).

nounced today, the audiotape was not admissible as fresh-complaint testimony.

 This audiotape is also not admissible as a prior consistent statement. Here, the ten-year-old's credibility was mildly questioned on cross-examination through questions concerning her disagreements with the defendant. The scope of this cross-examination simply would not permit the use of a twenty-minute audiotape detailing the abuse to rehabilitate the victim. Its admission as a prior consistent statement can not be stretched that far.

In conclusion, we find that the introduction of the audiotape was prejudicial error. It included compelling details about the abuse. Further, it included statements by Dozier to the effect that the victim was a child, but the defendant was an adult and knew better. The introduction of the audiotape, prejudicial to the defendant as it was, requires us to reverse the conviction on aggravated rape and grant a new trial.

Because the audiotape has no bearing in the case of the older victim, we affirm the judgment of conviction for sexual battery.

## JOHNNY R. TILLEY

The defendant, Johnny R. Tilley, was convicted of aggravated sexual battery and was sentenced to the Department of Corrections for ten years.

 The victim in this case, a nine-year-old niece of the defendant, testified that the defendant had "fingered" her vagina. After the incident, he threatened to "whip" her if she were to tell anyone what had happened. She was fearful of him and complied.

Approximately three months later, she told a cousin about the encounters[7] in order to gain her assistance in telling the victim's mother. The victim told her cousin the defendant "did nasty stuff to her and that he put a pillow over her face ... got on top of her ... and done [sic] sex to her." The trial court admitted the cousin's testimony as

fresh-complaint evidence and gave the jury limiting instructions.

In the Court of Criminal Appeals, the defendant asserted that the victim's statements to her cousin should not have been admitted under the fresh-complaint doctrine because they were not made soon enough after the commission of the offense. The court found sufficient evidence that the delay between the event and the statement was reasonable enough to permit the trial court to admit the statement under the fresh-complaint doctrine for the jury's consideration as limited by the trial court's instructions. Under the rule announced today, the testimony of the cousin was inadmissible under the fresh-complaint doctrine.

 While the testimony of the cousin was inadmissible under the fresh-complaint doctrine pursuant to the rule announced today, the credibility of the victim was attacked by defense counsel. On cross-examination, the defense questioned the victim's account by asking if she had told her aunt and mother something else. Therefore, the testimony of the cousin, who testified after the victim's credibility was attacked, was admissible as a prior consistent statement for corroborative purposes. *See State v. Meeks,* 867 S.W.2d 361 (Tenn.Crim.App.1993). In this case, the trial court instructed the jury that the testimony was not substantive evidence; thus, there was no error in the admission of the testimony.

The judgments of the Court of Criminal Appeals and the trial court are affirmed.

## DAVID JOHNSON

David Johnson, the defendant, was convicted of child abuse and sentenced to a jail term of eleven months twenty-nine days. The abuse here involved burns which resulted from having put a lighted cigarette against his five-year-old child's skin.

 At issue is the testimony of Cheryl Sharp and Wylene Jacobs. Jacobs was the Director of the Hiwassee Developmental Center, a therapeutic day nursery for pre-

---

7. She testified also about an attempted sexual encounter which occurred on a different occa- sion.

school children. Sharp was a nursery director at the center. Sharp testified that in July 1990, she saw what appeared to be an imprint from a belt buckle on the victim's cheek. Upon inquiry, the victim told her that his father had hit him with a belt. The victim repeated this response in Jacob's presence, and she testified about it also.

On November 1, 1990, the defendant came to the center and told Sharp that he needed to see his son. Sharp testified that she asked him why, and he replied that his mother-in-law had called him and told him that the victim told her that he was going to tell the teacher that his father burned him with cigarettes last night.

In the presence of Sharp and Jacobs, the defendant proceeded to question the victim about the origin of several marks and bruises on his body. The victim identified several marks on his body as having resulted from falling over on his bike or from falling in some gravel. When the defendant pointed to other marks and asked the victim how he got those, the victim replied that was where the defendant had burned him with cigarettes. The defendant protested that the boy could not say that, but the victim insisted that the marks were caused by cigarette burns inflicted by the defendant.

At trial, the court admitted the statements made by the victim to Sharp and Jacobs as evidence of fresh-complaint and gave the jury limiting instructions.

Additional fresh-complaint evidence was included in the testimony of Detective Barry Brakebill, who testified that the victim had told him that his father had burned him with a cigarette. Following Brakebill's testimony, the trial court gave the same limiting instructions. Finally, Brenda Rymer, the victim's grandmother, testified on rebuttal that the victim told her that his father had burned him.

On appeal, the intermediate court found that the statements complained of were fresh-complaint evidence and admissible as such even though the offense was child abuse unconnected with sexual activity.

In this appeal, the State concedes that the trial court erred in admitting the statements in question into evidence under the fresh-complaint doctrine. Concession notwithstanding, under the rule established today, we have narrowed the application of the fresh-complaint doctrine to the extent that it no longer applies in any case wherein a child is the victim of abuse—sexual or non-sexual.

It remains to determine whether the admission of the statements constitutes reversible error. In this case, the jury heard the testimony of the victim, heard the testimony of the therapeutic nursery workers, heard the expert testimony from two physicians, saw the photographs of the victim, and saw the scars on the victim's body.

Considering this evidence and the entire record, we cannot find that the admission of the questioned testimony more probably than not affected the judgment or would result in prejudice to the judicial process. Tenn. R.App.P. 36(b). Nor can we find that the errors affirmatively appear to have affected the result of the trial on the merits. Tenn. R.Crim.P. 52(a). Accordingly, in light of the overwhelming proof, it results that the judgment of the Court of Criminal Appeals upholding the conviction and approving the sentence is affirmed.

To summarize our dispositions:

Jerrell C. Livingston: Judgment of the Court of Criminal Appeals affirmed and remanded for a new trial.

Steve Bundy: Judgment of the Court of Criminal Appeals affirmed as to the conviction for sexual battery; conviction for aggravated rape reversed and remanded for a new trial.

Johnny R. Tilley: Judgment of the Court of Criminal Appeals affirmed.

David Johnson: Judgment of the Court of Criminal Appeals affirmed.

ANDERSON, C.J., and DROWOTA and REID, JJ., concur.

BIRCH, J., not participating (as to *State v. Livingston* ).

ANDERSON, C.J., DROWOTA and REID, JJ., and O'BRIEN, Special Justice, concur (as to *State v. Bundy, State v. Tilley,* and *State v. Johnson*).