IN THE SUPREME COURT OF TENNESSEE
AT JACKSON

**FOR PUBLICATION**

**Filed:  April 28, 1997**

STATE OF TENNESSEE,  )
)
Appellee,  )  SHELBY CRIMINAL
)
)
Vs.  )  HON. L. T. LAFFERTY, JUDGE
)
)
BARRY L. SPECK,  )  No.  02-S-01-9601-CR-00001
)
Appellant.  )

FILED

**April 28, 1997**

**Cecil Crowson, Jr.**
Appellate Court Clerk

**For Appellant:**

C. Anne Tipton
Memphis, Tennessee

A. C. Wharton, Jr.
Public Defender

Walker Gwinn
Assistant Public Defender
Memphis, Tennessee

At Trial:
B. Alan Newport
Assistant Public Defender
Memphis, Tennessee

**For Appellee:**

John Knox Walkup
Attorney General & Reporter

Michael E. Moore
Solicitor General

Gordon W. Smith
Associate Solicitor General
Nashville, Tennessee

John W. Pierotti
District Attorney General

Jennifer Nichols
Assistant District Attorney General
Memphis, Tennessee

# O P I N I O N

AFFIRMED.                                              ANDERSON, J.

We granted this appeal to review two issues: first, whether the bill of particulars sufficiently informed the defendant of the charges against him, and second, whether reversible error was committed when the trial court, applying the "fresh complaint" doctrine, ruled that the victim's out-of-court statements to his mother regarding sexual acts committed by the defendant were admissible to corroborate his in-court testimony.

The Court of Criminal Appeals concluded that the defendant failed to show he was prejudiced by the prosecution's bill of particulars and that the victim's out-of-court statements were admissible under the fresh complaint doctrine. The court, therefore, affirmed the defendant's conviction for aggravated rape of a victim who was less than thirteen years of age.

We agree that the defendant was not prejudiced when the prosecution elected an offense that occurred on a date that differed from the specific dates set forth in the bill of particulars. With respect to the admissibility of the victim's out-of-court statements, this Court held in State v. Livingston, 907 S.W.2d 392 (Tenn. 1995), that the doctrine of "fresh complaint" does not apply in child sexual abuse cases.[1] Accordingly, although we find that admission of the victim's out-of-court statements was error, we conclude that the error was harmless in light of the victim's trial testimony and the overwhelming evidence of the defendant's guilt. Tenn. R. App. P. 36(b). Accordingly, while we employ somewhat different reasoning, we affirm the judgment of the Court of Criminal Appeals.

---

[1] In fairness to the trial judge, this case was tried prior to our decision in Livingston, and the trial judge correctly applied the then-existing law to this case.

## BACKGROUND

The victim's proof is summarized as follows: The victim was in the second grade when he met the defendant, Barry Speck. With the permission of his mother, he began spending time with Speck watching movies, playing baseball and putt-putt golf, and attending scouting events. During the third and fourth grades, the victim occasionally spent the night with the defendant and slept with him on a couch.

Near the end of the victim's fourth grade school year, and during the summer of 1991, Speck started touching the victim's penis. The behavior escalated to mutual touching, and Speck and the victim masturbated one another. Although the victim was "confused" by the sexual acts, Speck told him not to tell anyone what was occurring because he would be "locked up in prison."

During the fifth grade, and the summer of 1992, the victim stayed with the defendant three or four nights per week. Speck began committing acts of fellatio on the victim, and eventually, he asked the victim to perform fellatio on him. Although he "didn't feel right about it," the victim complied because Speck acted "real cold and mean" if he refused. The victim's mother became concerned about the time the victim was spending with Speck and initially placed limits. Speck's response was anger and hurt. Later, in August of 1992, the mother told the victim he could no longer see the defendant. The victim responded by telling his mother about the sexual acts committed by Speck.

Tamara Carly, a friend of the victim's mother, testified that she initially thought Speck was like a "big brother" to the victim. After observing Speck and the victim in the summer of 1992, she began to think that the defendant's public behavior in touching and hugging the victim was excessive and inappropriate.

After Speck was arrested, he left several taped telephone messages on Carly's answering machine in which he professed his love for the victim and his distress over the charges. According to Carly, he also left several audio tapes containing messages for the victim. In one message, Speck stated that the love between he and the victim was not "perverted" and that "had [he] known [he] was going to be accused of being perverted, [he] would have found another kid." In another tape, Speck described how he would spread his legs while urinating to allow the victim to urinate from behind him at the same time. Finally, Speck also said that he "was the only person who knew how many hairs the victim had on his testicles."

The defendant, Barry Speck, testified and admitted a close relationship with the victim, but denied that he had committed sexual acts. He acknowledged that the victim often stayed overnight at his apartment, but denied that any sexual acts were committed. The defendant admitted leaving the phone messages and tape recordings with Tamara Carly.

**BILL OF PARTICULARS**

The indictment alleged that the offense of aggravated rape was committed between July 1, 1990, and July 31, 1992. In response to the defendant's motion for a bill of particulars, the prosecution supplied the following information:

> The victim, [M.W.], whose birth date is June 12, 1981, alleges that between July 1, 1990 and July 31, 1992, the defendant did engage the victim in repeated acts of fellatio whereby the defendant would perform the act on the victim and the victim would perform the act upon the defendant. Additionally, the defendant engaged the victim in masturbation whereby the defendant would masturbate the victim and the victim would masturbate the defendant.
>
> These acts occurred repeatedly between July 1, 1990 and July 31, 1992, including on or about June 12, 1992 and on or about June

-4-

29, 1992. Said acts occurred at the defendant's residence and in the defendant's car.

At trial, the victim testified that numerous sexual acts consisting of mutual touching and masturbation were committed beginning near the end of his fourth grade year in 1991. He also testified that, beginning in the fifth grade, the defendant committed acts of fellatio upon him and that he performed fellatio upon the defendant. These acts continued through the summer of 1992.

In order to protect the defendant's right to a unanimous jury verdict under article I, section 6 of the Tennessee Constitution, the trial court, at the close of the State's proof, ordered the prosecution to elect a single offense upon which it sought the aggravated rape conviction. See State v. Shelton, 851 S.W.2d 134 (Tenn. 1993). The prosecution elected to predicate the aggravated rape conviction on the first incident in which the victim committed fellatio at the defendant's apartment. The incident occurred between August of 1991 and May of 1992, when the victim was in the fifth grade.

The defendant maintains on appeal that the prosecution's bill of particulars did not provide sufficient information about the charged offense. Moreover, the defendant argues that he was misled when the prosecution predicated the offense on an incident that did not occur on either June 12, 1992, or June 29, 1992, the specific dates provided in the bill of particulars. The Court of Criminal Appeals held that the defendant failed to show that he was prejudiced by the prosecution's election of a date that differed from the specific dates set forth in the bill of particulars. We agree.

The rules provide that upon a defendant's motion, "the court may direct the filing of a bill of particulars so as to adequately identify the offense charged." Tenn. R. Crim. P. 7(c). The purpose of the bill of particulars is to provide

-5-

information about the details of the charge when necessary for a defendant to prepare his or her defense, to avoid prejudicial surprise at trial, and to enable the defendant to preserve a plea of double jeopardy. Information that may be required in the bill of particulars includes, but is not limited to, details as to the nature, time, date, or location of the offense. See State v. Byrd, 820 S.W.2d 739, 741-42 (Tenn. 1991).

Although a court should make every effort to see that the prosecution supplies critical information in the bill of particulars, we have observed that in cases involving child sexual abuse, the prosecution may be unable to supply specific dates on which alleged offenses occurred. In such cases, however, where the victim is too young to recall specific dates, "the child may be able to define the time of the offense by reference to such memorable occasions in a child's life as birthdays, seasonal celebrations and holidays, the beginning or end of the school year, or visitations by relatives." State v. Shelton, 851 S.W.2d at 137; State v. Byrd, 820 S.W.2d at 741-42. If the State is truly unable to provide even an approximate time or date of the offense by means of a descriptive reference, "a conviction may nonetheless be affirmed if in the course of trial it does not appear that the defendant's defense has been hampered by the lack of specificity." Id. We explained in Byrd that

> it is only by *post hoc* examination of the matter that the court will be able to determine whether deficiencies in the bill of particulars prevented the defendant from preparing an adequate defense, caused undue and prejudicial surprise, or made untenable a later plea of double jeopardy. In other words, the trial court cannot determine whether or not the defendant has been hampered in his defense until the court knows what proof the state will offer as to time and place of the offense, and how this evidence relates to the actual theory of defense.

Id. at 741.

In this case, the trial judge found that additional information was necessary to assist the defendant in preparing for trial, and correctly ordered the

prosecution to supplement the skeletal charge contained in the indictment. The prosecution supplied details with regard to the nature of the sexual acts, the locations in which the acts occurred, and the range of time, including dates on which acts may have occurred. The defendant does not argue that the particulars were inadequate to preserve a plea against double jeopardy.[2] Instead, he contends that he was prejudiced at trial when the State failed to adhere to the two specific dates set forth in the bill of particulars. We disagree.

Preliminarily, we observe that the trial judge's painstaking effort to ensure that the prosecution complied with its duty to elect a single offense successfully narrowed the time frame of the offense. We also observe that there is no indication in the record that the prosecution intentionally sought to mislead the defense. Although the State listed two specific dates in the bill of particulars, it did not limit the offenses to those two days; to the contrary, the bill of particulars stressed that the offenses were ongoing. When the victim testified at trial that numerous offenses occurred during a time frame that encompassed the June of 1992 dates set forth in the bill of particulars, the prosecution elected to proceed on an offense described in the victim's testimony by reference to his grade in school and summer vacations. This procedure was entirely consistent with that prescribed by State v. Shelton, supra, and State v. Byrd, supra.

Moreover, the defendant failed to show either during or after trial that he was prejudiced by the prosecution's election of an offense that occurred on a day that differed from the dates in the bill of particulars. The defendant categorically denied the charges, and there is no indication that he was misled or prejudiced by the State's bill of particulars. For instance, the defendant did not present an alibi defense for the specific dates in June of 1992, nor did he offer

---

[2] Our cases indicate that the defendant is protected from being placed in jeopardy for any similar offenses committed during the entire time period charged in the indictment, i.e., July 1, 1990 to July 31, 1992. State v. Byrd, 820 S.W.2d at 742, n.1 (citing, State v. Anderson, 748 S.W.2d 201, 204 (Tenn. Crim. App. 1985)).

any other defense geared toward those specific dates. Similarly, the defendant did not offer any defenses post-trial that he would have used at trial were it not for the specific dates set forth in the bill of particulars. Accordingly, we conclude that the defendant has failed to show that he was prejudiced in his defense at trial.

## FRESH COMPLAINT

The fresh complaint doctrine as applied in Tennessee traditionally allowed a victim's out-of-court statements regarding a sexual offense to be introduced at trial to corroborate the victim's in-court testimony. See Phillips v. State, 28 Tenn. 246 (1848); Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523, 528 (1963); State v. Dies, 829 S.W.2d 706 (Tenn. Crim. App. 1991). Under Phillips, the fact of a victim's complaint, as well as the details, was admissible during the prosecution's case in chief. 28 Tenn. at 251.

The doctrine evolved from an "expectation" that the victim would make an "immediate outcry" following a sexual offense. State v. Kendricks, 891 S.W.2d 597, 600-601 (Tenn. 1994). As we discussed in Kendricks:

> Because juries were allowed -- sometimes even instructed -- to draw negative inferences from the [victim's] failure to complain after an assault [citation omitted], the doctrine of 'fresh complaint' evolved as a means of counterbalancing these negative inferences. Used in this way, the 'fresh complaint' doctrine allowed the prosecutor to introduce, during the case in chief, evidence that the victim had complained soon after the rape. Its use thereby forestalled the inference that the victim's silence was inconsistent with her present formal complaint of rape.

Id. at 601. Although we recognized that any "expectation" that a victim of sexual abuse should react in a prescribed manner is fundamentally flawed, we retained a modified form of the doctrine in cases where the victim is an adult: in such cases, the fact of the victim's complaint is admissible during the prosecution's

case in chief, but the details of the incident are not admissible unless and until the credibility of the victim is attacked. Id. at 603.

In State v. Livingston, 907 S.W.2d 392 (Tenn. 1995), we revisited the fresh complaint doctrine as applied in cases where the victim is a child. In so doing, we distinguished the rationale which led us to retain the modified doctrine in Kendricks:

> Retention of the fresh complaint doctrine in cases involving adult victims of sexual offenses furnishes no justification for extending the rule to cases involving child victims. The expectation that 'normal' women will complain after a sexual offense, if ever applicable to anyone, is certainly not applicable to child victims of sexual offenses. . . .
>
> [U]nlike the presumptions regarding adult victims, juries do not necessarily presume that children fabricate, nor do they presume that a child will complain immediately. Having reluctantly retained the doctrine of fresh complaint in the fact of its many shortcomings in cases involving adult victims, we cannot reach the same result for child victims. The historic premises which supported our retention of the rule in adult victim cases simply do not support the application of the doctrine in child victim cases.

Id. at 394-95 (emphasis added). While abandoning the fresh complaint doctrine in such cases, we recognized that many out-of-court statements made by the victim, such as prior consistent statements, excited utterances, and statements made for medical diagnosis and treatment, will still be admissible under the existing rules of evidence. Id. at 394.

Having held that the fresh complaint doctrine is no longer applicable in cases where the victim is a child, it follows that the admission of the victim's statement to his mother pursuant to the doctrine was error. The next question is whether the admission of these statements constitutes reversible error. The statements made by the victim to his mother were brief, contained few details, and were accompanied by a limiting instruction to the jury. By contrast, the victim's testimony at trial clearly described his relationship with the defendant

over a period of years, as well as the nature and extent of the sexual acts committed by the defendant. The jury obviously accredited this testimony over the defendant's blanket denials of wrongdoing. Moreover, when the victim's testimony is coupled with the remaining evidence of guilt and the record as a whole, we do not find that the admission of the victim's out-of-court statement more probably than not affected the jury or prejudiced the judicial process. Tenn. R. App. P. 36(b).

## CONCLUSION

We conclude that the defendant was sufficiently informed of the charges against him and was not prejudiced by the prosecution's election of an offense occurring on a date other than the specific dates set out in the bill of particulars. We also conclude that the admission of the victim's out-of-court statements to his mother constituted error, but it was not reversible error because of the overwhelming evidence of the defendant's guilt. The Court of Criminal Appeals' judgment upholding the conviction for aggravated rape is affirmed.

_____
E. RILEY ANDERSON, JUSTICE

**Concur:**
Birch, C.J.
Drowota and Reid, JJ.