## IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

### AT JACKSON

### DECEMBER SESSION, 1997



**FILED**

**March 19, 1998**

**Cecil Crowson, Jr.**
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 02C01-9610-CR-00379** |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | **SHELBY COUNTY** |
| **VS.** | ) | |
| | ) | **HON. CAROLYN WADE BLACKETT** |
| **LARRY F. MORRIS,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | **(Direct Appeal - Aggravated Sexual** |
| | ) | **Battery** |

FOR THE APPELLANT:

BILL ANDERSON, JR.
138 N. Third St.
Memphis, TN 38103

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

KENNETH W. RUCKER
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-4351

WILLIAM L. GIBBONS
District Attorney General

PAUL F. GOODMAN
RHEA CLIFT
Assistant District Attorneys
201 Poplar Avenue - 3rd Floor
Memphis, TN 38103

OPINION FILED _____

AFFIRMED

JERRY L. SMITH, JUDGE

# OPINION

On February 8, 1996, a Shelby County jury found Appellant, Larry F. Morris, guilty of aggravated sexual battery. The trial court conducted a sentencing hearing and sentenced Appellant to eight years in the Tennessee Department of Corrections as a standard Range I offender. Appellant appeals from the judgment, raising several issues, specifically:

1) whether the indictment in the cause was fatally defective so as to deprive the trial court of jurisdiction;
2) whether the trial court erred in finding the victim competent to testify;
3) whether the trial court erred in allowing the jury to hear a tape of an interview of Appellant by the Tennessee Department of Human Services;
4) whether the trial court erred in refusing to allow the defense to review the entire file of the Tennessee Department of Human Services concerning the investigation of this case;
5) whether the trial court erred in allowing testimony concerning the victim's "fresh complaint"; and
6) whether the evidence was sufficient to sustain the jury's verdict.

After a review of the record, we affirm the judgment of the trial court.

## FACTS

On September 29, 1994, around two o'clock in the afternoon, Helen Trammell picked up her granddaughter, A.C., and her grandson, from a Mother's Day Out program which the children attended every Tuesday and Thursday.[1] A.C. wanted to go play with Jonathan Morris, Appellant's son, instead of accompanying her grandmother on an errand. Ms. Trammell took A.C. to the Morris apartment, and left A.C. in Appellant's care. Appellant told Ms. Trammell

---

[1] It is the policy of this Court to refer to child victims of sex abuse by initials only.

that his wife had gone out to pay a cable bill, but would return home with Jonathan in about ten minutes.

According to A.C., while alone with Appellant, Appellant "put [his finger] down here and hurt me." A.C. testified that Appellant touched her inside her panties with his index finger. Ms. Trammell returned from her errands, and found Appellant, his wife and Jonathan all at home. Normally A.C. would continue playing with Jonathan, but on this occasion she attached herself to her grandmother. Ms. Trammell took A.C. to her house, and A.C.'s mother picked the children up around six o'clock that evening.

The next morning A.C. returned to Ms. Trammell's house. A.C. told Ms. Trammell of the pain between her legs. During that day, Ms. Trammell observed that A.C. was behaving strangely, crying and staying very close to her grandmother, Ms. Trammell. Ms. Trammell was forced to pull the shades down in the apartment because A.C. was terrified of Appellant, whose apartment was nearby.

Ms. Trammell called A.C.'s mother at work, who in turn called the Rape Crisis Center. A.C.'s mother picked up A.C. around five thirty in the afternoon and she, A.C., A.C.'s father and A.C.'s brother went to Chuck E. Cheese's. After eating, A.C.'s parents took her to LeBonheur Hospital, where they were unsuccessful in obtaining medical attention. On Monday, A.C. was taken to the Children's Advocacy Center where she was examined by Dr. Judith Hersh, an obstetrician-gynecologist with a specialty in pediatric and adolescent gynecology.

Dr. Hersh noted a healing abrasion on A.C.'s left labia majora, which she felt had occurred within a week to ten days of the examination.

During the course of the Department of Human Services investigation of the possible abuse of A.C., Jean Watson, of that agency, talked with A.C., Ms. Trammell and Appellant. Ms. Watson taped her interview with Appellant. In the interview, Appellent explicitly denied that A.C. had been at his house on the day in question. Ms. Watson testified that she said nothing during the interview to indicate which day was under investigation, but that Appellant of his own accord denied that A.C. had been with him on "Thursday."

## I. SUFFICIENCY OF THE EVIDENCE

In his final allegation of error, Appellant challenges the sufficiency of the evidence presented at trial. When an appellant challenges the sufficiency of the evidence, this Court is obliged to review that challenge according to certain well-settled principles. A verdict of guilty by the jury, approved by the trial judge, accredits the testimony of the State's witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn.. 1992). Although an accused is originally cloaked with a presumption of innocence, a jury verdict removes this presumption and replaces it with one of guilt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn.. 1982). Hence, on appeal, the burden of proof rests with Appellant to demonstrate the insufficiency of the convicting evidence. Id. On appeal, "the [S]tate is entitled to the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Id. (*Citing* State v. Cabbage, 571 S.W.2d 832, 835 (Tenn.. 1978)). Where the sufficiency of

the evidence is contested on appeal, the relevant question for the reviewing court is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. Harris, 839 S.W.2d 54, 75; Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). In conducting our evaluation of the convicting evidence, this Court is precluded from reweighing or reconsidering the evidence. State v. Morgan, 929 S.W.2d 380, 383 (Tenn.. Crim. App. 1996); State v. Mathews, 805 S.W.2d 776, 779 (Tenn.. Crim. App. 1990). Moreover, this Court may not substitute its own inferences "for those drawn by the trier of fact from circumstantial evidence." Mathews, 805 S.W.2d at 779. Finally, the Tennessee Rules of Appellate Procedure, Rule 13(e) provides, "findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact beyond a reasonable doubt." *See also* State v. Mathews, 805 S.W.2d at 780.

In the matter sub judice, Appellant was charged with aggravated sexual battery which is defined in pertinent part as unlawful sexual contact with a victim by the defendant when the victim is less than thirteen years of age. Tenn. Code Ann. 39-13-504(a) & 39-13-502(a)(4). "Sexual contact" includes the intentional touching of the victim's intimate body parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification. Tenn. Code Ann. 39-13-501(6). A.C. testified that Appellant used his finger to touch her under her panties, and that his touch hurt her. Dr. Hersh testified that the scratch on A.C.'s labia majora was consistent with the touch of a human finger. A.C. was less than thirteen years of age at the time of the offense. Jurors may use their common knowledge and experience in making reasonable inferences from this evidence. State v. Meeks, 876 S.W.2d 121, 131

(Tenn. Crim. App. 1993)(*citing* 23A C.J.S. Criminal Law § 1380). The sexual contact could reasonably have been construed by the jury as being for sexual arousal or gratification This issue is without merit.

## II. SUFFICIENCY OF THE INDICTMENT

Appellant raises an issue of the sufficiency of the indictment, alleging that under this Court's decision in State v. Hill, 1996 WL 346941, the indictment in this case fails because it did not allege a mens rea for the crime. However, since the filing of the briefs in this matter, the Supreme Court settled this issue in State v. Hill, 01-S-01-9701-CC-00005, Wayne County, (Tenn., November 3, 1997), holding that the required mental state "may be inferred from the nature of the criminal conduct alleged." Id. at 9. This issue is without merit.

## III. COMPETENCY OF VICTIM TO TESTIFY

Appellant next alleges that the trial court erred in finding A.C. competent to testify. Appellant contends that because A.C. stated during the competency hearing that she had never told an untruth that she does not understand the difference between truth and lying. The Tennessee Rules of Evidence Rule 601 clearly states that every person is presumed to be a competent witnesses unless falling into one of the listed categories. This rules means that no person shall be automatically barred from testifying simply because of age or mental status. "The purpose of determining the competency of the witness in child sexual abuse cases is to allow a victim to testify if it can be determined that the child understands the necessity of telling the truth while on the witness stand." State

v. Ballard, 855 S.W.2d 557, 560 (Tenn. 1993). The question of competency is a matter for the trial court's discretion. State v. Caughron, 855 S.W.2d 526, 538 (Tenn. 1993) (*citing* Arterburn v. State, 391 S.W.2d at 657; State v. Braggs, 604 S.W.2d 883, 886 (Tenn.Crim.App.1980); State v. Nelson, 603 S.W.2d 158, 168 (Tenn.Crim.App.1980)). The record shows that the witness demonstrated that she knew the difference between the truth and a lie, identifying examples of each. She further testified that she realized that it was very important for her to tell the truth. The court did not abuse its discretion here. This issue is without merit.

## IV. TAPED INTERVIEW

Appellant also argues that the trial court erred in permitting the playing for the jury of a taped interview of Appellant conducted by Jean Watson, an investigator for the department of Human Services. In this interview, Ms. Watson told Appellant that he was under investigation for having molested A.C, but did not tell Appellant when the molestation allegedly occurred. Appellant admitted that A.C. had visited his home, but specifically denied that A.C. had been in his care the previous Thursday, the day on which A.C. claimed that the event took place. Appellant claims that the statement is hearsay in that it does not reach the level of an admission of a party opponent and further contends that the statement is irrelevant to the issues at trial.

Tenn. R. Evid. 801(c) defines "hearsay" as:

> . . . a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

Here the State offered the tape as proof of Appellant's guilty knowledge, rather than the truth of the matter asserted, and therefore claims that the tape was not hearsay evidence. Clearly the State was not attempting to prove the truth of the statement, which is exculpatory in substance. The statement is not hearsay, but was admitted to show the Appellant's guilt through his having volunteered the date of the alleged offense without ever having been told of the date. This issue is without merit.

## V. DEPARTMENT OF HUMAN SERVICES CASE FILE

Appellant also contends that the trial court erred in refusing to grant defense counsel access to the entirety of the Department of Human Services case file regarding this case. Because Appellant objected to the jury reading a transcript of the interview between Ms. Watson and Appellant, the keeper of the Department of Human Services' records, a Ms. Smiley, was called to testify that she maintained the DHS records during the course of her employment and that the DHS file contained the interview tape. Ms. Smiley had no prior knowledge of this case, and merely testified as to the location of the tape in the DHS archives. Appellant argues that under the Tennessee Rules of Evidence Rule 612, he was entitled to review the DHS file.

Tenn. R. Evid. 612 provides:

> If a witness uses a writing while testifying to refresh memory for the purpose of testifying, an adverse party is entitled to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness. If it is claimed that the writing contains matters not related to the subject matter of the testimony, the court shall examine the writing in camera, excise any portions not so related, and order delivery of the remainder to the party entitled thereto. Any portion withheld over objections shall be preserved and made available to the appellate court in the event of appeal. If a writing is not produced or delivered pursuant to order under this rule, the court shall make any order justice requires; in criminal cases when the prosecution elects not to comply, the order shall be one striking the testimony or, if the court in its discretion determines that the interests of justice so require, declaring a mistrial.

The record demonstrates that Ms. Smiley did not use the records to refresh her memory; she merely testified that the interview tape was contained in the DHS records. Thus, Rule 612 does not apply here. This issue is without merit.

## VI. FRESH COMPLAINT

Appellant argues that the trial court erred in allowing into evidence testimony which should have been excluded as "fresh complaint". In State v. Livingston, the Supreme Court held that "in cases where the victim is a child, neither the fact of the complaint nor the details of the complaint to a third party is admissible under the fresh complaint doctrine." State v. Livingston, 907 S.W.2d 392 (Tenn. 1995). Appellant's allegation is that with Officer William Kohl, A.C.'s mother and Ms. Trammell, the State brought into evidence the fact of A.C.'s complaint against Appellant. The record, however, does not support Appellant's position. The doctrine of fresh complaint was developed in order to admit

evidence which otherwise would be excluded under the hearsay rules. In Livingston the Supreme Court, while expressing displeasure with both the rule and the underlying societal reason for the rule, explained that it viewed the doctrine as still necessary in adult sexual assault cases because of the societal view that an adult who is assaulted will report the crime. Id. at 394. "Fresh complaint" is essentially a hearsay exception which applies only to sexual assault cases involving adults. Fresh complaint is not implicated unless the testimony is hearsay testimony.

The State questioned Officer Kohl solely about whether he took a complaint from the victim's family. This testimony is not hearsay testimony, and therefore need not be subjected to "fresh complaint" analysis. Further, the testimony of A.C.'s mother related only to what she did on the days following the crime: she reported that the day after the crime, she called the Rape crisis Center and later took her daughter to the hospital, hoping to see a doctor. She also testified that she took A.C. to the Children's Advocacy Center where A.C. was seen by a doctor. Her testimony presented no hearsay evidence; it merely related her actions. Finally the testimony of Ms. Trammell to which Appellant objected was merely her observation that A.C. "was real red", an observation made by the witness. This is not "fresh complaint" evidence. This issue is without merit.

For the aforementioned reasons, the judgment of the trial court is affirmed.

-10-

_____
JERRY L. SMITH, JUDGE


CONCUR:



_____
JOE B. JONES, PRESIDING JUDGE


_____
J. CURWOOD WITT, JR., JUDGE