IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
September 27, 2000 Session

## STATE OF TENNESSEE v. WILLIAM TERRELL HAMPTON

**Appeal from the Criminal Court for Bradley County**
**No. M-99-241     Caroll L. Ross, Judge**

---

**No. E2000-00582-CCA-R3-CD**
**December 8, 2000**

---

The defendant appeals his conviction for aggravated sexual battery, contending that the evidence is insufficient to support his conviction, the trial court erred in admitting evidence of a fresh complaint, and the trial court erred in imposing a nine-year sentence. We affirm the defendant's conviction and sentence.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which JERRY L. SMITH and JAMES CURWOOD WITT, JR., JJ., joined.

Ashley L. Ownby, Cleveland, Tennessee, attorney for the appellant, William Terrell Hampton.

Paul G. Summers, Attorney General and Reporter; Mark A. Fulks, Assistant Attorney General; Jerry N. Estes, District Attorney General; and Sandra N. Donaghy, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The defendant, William Terrell Hampton, appeals as of right his conviction by a jury for aggravated sexual battery, a class B felony, for which he was sentenced as a Range I offender to nine years in the Department of Correction. The defendant contends that (1) the evidence is insufficient to support his conviction because the victim's testimony is the only evidence that supports the conviction; (2) the trial court erred in admitting evidence of a fresh complaint; and (3) the trial court erred in sentencing him by applying the enhancement factor of abuse of a position of private trust.

At trial, the victim testified that on March 25, 1998, she was seven years old and was living with the defendant and his wife who are her uncle and aunt. She stated that when she got home from school, the defendant was mowing the lawn, and her aunt was still at work. She said that she roller skated for a few minutes and then went inside to watch television. She said that while she was watching television, the defendant came into the room wearing a robe and asked her to sit on his lap.

She stated that she did so briefly but then laid back down on the floor. She testified that the defendant also got on the floor, and his robe opened, exposing his private part. She said that the defendant rubbed her stomach smoothly with his hand under her shirt, touched her private part and her chest with his hand over her clothes, and softly rubbed his index finger on her lips. The victim identified her private part as being in the middle of her body where her legs and body meet. The victim stated that the defendant then carried her to his bedroom, where he laid her on his bed. She said that at this point, she heard the basement door close and told the defendant that she was going to tell and that the defendant said, "No, don't." She testified that she then left the house with her aunt, and while they were in the car, she told her aunt what had happened. She stated that she also talked with Detective Quinn sometime later.

Bradley County Sheriff's Department Detective Brian Quinn testified as follows: He interviewed the defendant on May 13, 1998. He read the defendant his Miranda rights, and the defendant signed a waiver. He asked the defendant to give his version of what happened on March 25, 1998, and the defendant wrote the following:

> (March 25th) Wednesday afternoon around 2:45, I was mowing the front yard. [The victim] came home from school. She put on her roller blade skates and went up the road (Woodfrin) and started to skate down the hill. I got on to her, afraid she would fall down. I didn't finish the yard, and had her come inside to watch TV.

> My wife was to come home at 5:00 p.m. to take her to church. We sat down around 4:00 p.m. to watch Rosie. I put on my bathrobe and got ready to take a shower. When I got out of the shower, my wife and [the victim] had left.

Detective Quinn then asked the defendant questions about what had happened on the day in question. The defendant admitted that he drank three or four beers that afternoon. When asked about the incident with the victim, the defendant stated, "Something happened, but I can't remember." The defendant said that he was wearing a bath robe and that it "could have come open." Also, the defendant admitted that he had rubbed the victim's legs but denied touching her anywhere else. The defendant refused to write another statement to include this additional information. However, Detective Quinn made written notes of the defendant's answers immediately after the interview.

The defendant testified as follows: The victim and her mother lived with him and his wife on different occasions for about four years because the victim's parents were having marital problems. Although the victim's mother would move out periodically, the victim stayed at their house the majority of the time. On March 25, 1998, he was mowing the front yard when the victim came home from school. He gave her permission to skate but thought that she would stay in the area near the carport. When he saw the victim skating in the street, he harshly told her to take the roller blades off and go inside, which she did. As he continued to mow the yard, he noticed one of the victim's notebooks on a hedge below her bedroom window. He went inside and reprimanded the victim, who was in the den watching television, for throwing her notebook out the window. Then, he went to his bedroom, took off his clothes, put on a robe, and returned to the den to watch

television.  After a few minutes, the victim sat on the arm of the chair in which he was sitting.  He patted the victim's leg, attempting to reassure her.  About twenty minutes later, he went to take a shower, and when he got out, the victim had left with his wife.

The defendant testified that he talked to Detective Quinn about this incident and said, "If something happened, I don't recall it."  He said that he was not intoxicated that afternoon and that he did not touch the victim anywhere other than her leg.  He admitted that his robe could have opened but denied ever taking the victim into his bedroom.

## I.  SUFFICIENCY OF THE EVIDENCE

The defendant argues that the evidence supporting his conviction is insufficient because the victim's testimony was the only evidence of a crime presented by the state and no evidence corroborated her testimony.  The defendant asserts that more evidence than just the victim's testimony should be required to safeguard defendants from being convicted based upon children's lies.  The state argues that the evidence is sufficient to support the defendant's conviction.  We agree with the state.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979).  This means that we do not reweigh the evidence but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state.  See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

In the present case, the defendant was convicted of aggravated sexual battery against a victim less than thirteen years old.  To establish this offense, the state was required to prove that "there was unlawful sexual contact with the victim by the defendant" and that the victim was less than thirteen years old.  Tenn. Code Ann. § 39-13-504(a)(1).  "Sexual contact" is "the intentional touching of the victim's . . . intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's . . . intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification."  Tenn. Code Ann. § 39-13-501(6).

The victim's testimony, when viewed in the light most favorable to the state, reveals that the defendant took off his clothes, put on a robe, and went to watch television with the victim.  The defendant's robe opened, exposing his private part.  The defendant then intentionally touched the victim's lips, stomach, chest, legs, and area between the legs.  The victim was seven years old when this occurred.  From this evidence a rational jury could have found the elements of aggravated sexual battery beyond a reasonable doubt.

The defendant argues that we should require some evidence other than the child victim's testimony to support his conviction for aggravated sexual battery.  The defendant asserts that this is

especially necessary because the child victim's reliability was questionable, noting that the victim had a motive for lying because he reprimanded her for skating in the street and for throwing her notebook out the window. The defendant supports his argument with cases holding that a conviction may not be based solely upon the uncorroborated testimony of an accomplice. See, e.g., Henley v. State, 489 S.W.2d 53, 55-56 (Tenn. Crim. App. 1972). However, we note that the legislature has provided that when a sex abuse victim is less than thirteen years old, "such victim shall, regardless of consent, not be considered to be an accomplice to such sexual penetration or sexual conduct, and no corroboration of such alleged victim's testimony shall be required to secure a conviction if corroboration is necessary solely because the alleged victim consented." Tenn. Code Ann. § 40-17-121. This statute is controlling. The evidence is sufficient to convict the defendant.

## II. FRESH COMPLAINT

The defendant argues that the trial court erred in admitting evidence of a fresh complaint. The two statements about which the defendant complains are (1) the victim's statement that she told her aunt what happened and (2) Detective Quinn's statement that the defendant came into the office relative to a complaint that he had received. The state argues that the two statements were not fresh complaint.

The fresh complaint doctrine traditionally "allowed a victim's out-of-court statements regarding a sexual offense to be introduced at trial to corroborate the victim's in-court testimony." State v. Speck, 944 S.W.2d 598, 601 (Tenn. 1997) (citing Phillips v. State, 28 Tenn. 246, 250-51 (1848)). "Under Phillips, the fact of the victim's complaint, as well as the details, was admissible during the prosecution's case in chief." Speck, 944 S.W.2d at 601. The Tennessee Supreme Court modified this doctrine in State v. Kendricks, holding that the fact of an adult victim's complaint is admissible during the prosecution's case-in-chief, but the details of the incident are not admissible unless and until the victim's credibility is attacked. 891 S.W.2d 597, 603 (Tenn. 1994). One year later in State v. Livingston, the supreme court held that "in cases where the victim is a child, neither the fact of the complaint nor the details of the complaint to a third party is admissible." 907 S.W.2d 392, 395 (Tenn. 1995). The court noted, however, that such evidence may be admissible under a hearsay exception or the prior consistent statement rule. Id.

In the present case, the defendant argues that the two statements were improperly admitted as fresh complaint. The defendant argues that the victim's statement that she told her aunt what happened and that Detective Quinn's statement that the defendant came into the office relative to a complaint that he had received were improperly admitted. The first statement is the child victim's testimony that she made a complaint to a third party. We agree with the defendant that this is a fresh complaint and should have been excluded under Livingston. The second statement is Detective Quinn's testimony that a complaint was received. The statement, however, does not identify who made the complaint. To the extent that it can be inferred that the child victim made the complaint, this statement is a fresh complaint and should have been excluded under Livingston. Without this inference, the statement that a complaint was received is irrelevant and, thus, inadmissible. See Tenn. R. Evid. 401, 402. The statement explaining the reason why Detective Quinn was

interviewing the defendant – without the inference that the child victim made the complaint – does not "have any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401.

Having concluded that the trial court improperly allowed into evidence the two statements, we must determine whether the admission of the statements was reversible error. First, the victim's statement was brief and contained no details. The statement did not recount her testimony, and the victim's aunt did not testify about what the victim told her. Second, the detective's statement was brief and did not provide any details of the complaint. Indeed, the statement did not even identify who made the complaint. In fact, the jury could have inferred that the victim made the complaint from the fact that the defendant was on trial. In contrast to the two statements, the victim testified in detail about the defendant touching her. The jury obviously accredited her testimony over that of the defendant's. We cannot conclude that the admission of the fact that the victim made a complaint to a third party more probably than not affected the outcome of the trial. T.R.A.P. 36(b).

### III. SENTENCING

The defendant contends that the trial court imposed an excessive sentence. He argues that the court improperly sentenced him by applying the enhancement factor of abuse of a position of private trust. See Tenn. Code Ann. § 40-35-114(15). The state argues that the enhancement factor was properly applied.

When a defendant appeals the length, range, or manner of service of a sentence imposed by the trial court, this court conducts a de novo review of the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d). The presumption of correctness is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The burden of showing that the sentence is improper is upon the appealing party. Tenn. Code Ann. § 40-35-401(d), Sentencing Commission Comments. However, if the record shows that the trial court failed to consider the sentencing principles and all relevant facts and circumstances, then review of the sentence is purely de novo. Ashby, 823 S.W.2d at 169.

The defendant was sentenced as a Range I offender, for which the applicable range for a class B felony is eight to twelve years. Tenn. Code Ann. § 40-35-112(a)(2). The presumptive sentence for a class B felony is the minimum in the range when there are no enhancement or mitigating factors present. Tenn. Code Ann. § 40-35-210(c). Procedurally, the trial court is to increase the sentence within the range based upon the existence of enhancement factors and then reduce the sentence as appropriate for any mitigating factors. Tenn. Code Ann. § 40-35-210(d), (e). The weight to be afforded an existing factor is left to the trial court's discretion so long as it complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record. Tenn. Code Ann. § 40-35-210, Sentencing Commission Comments; Ashby, 823 S.W.2d at 169.

In the present case, the presumption of correctness applies because the record reveals that the trial court considered all the relevant facts and circumstances as well as sentencing principles. The trial court reviewed the pre-sentence report, heard the defendant's testimony, and considered arguments of counsel. The trial court started at the minimum sentence of eight years but increased the sentence to nine years after finding that one enhancement factor applied, that the defendant abused a position of private trust. Tenn. Code Ann. § 40-35-114(15). The defendant contests this finding, arguing that there was no evidence to support the finding of this enhancement factor. We disagree. A position of private trusts exists when the defendant "formally or informally stood in a relationship to the victim that promoted confidence, reliability, or faith." State v. Kissinger, 922 S.W.2d 482, 448 (Tenn. 1996). Moreover, "[w]here the adult perpetrator and minor victim are members of the same household, the adult occupies a position of 'presumptive private trust' with respect to the minor." State v. Gutierrez, 5 S.W.3d 641, 645 (Tenn. 1999); see also State v. Carico, 968 S.W.2d 280, 286 (Tenn. 1998). In the present case, the victim, the defendant's niece, lived with the defendant and his wife off and on for the majority of the four years before the commission of the offense. The defendant acknowledges this fact but argues that he was not in a parental relationship with the victim because he did not discipline or supervise the victim. The defendant stated that he left those responsibilities for his wife. However, the record reveals that on the day the battery occurred, when the seven-year-old victim returned from school, the defendant was the only adult present at his house. Upon the victim's request, the defendant gave her permission to skate. When the defendant saw the victim skating in the road, he told her to stop skating and go inside the house. The defendant also reprimanded the victim for throwing her notebook out of a window. Moreover, at the sentencing hearing, the defendant testified that

> I would just like to say that [the victim]'s my niece and my wife's niece. We've raised her since she was a child. We love her very much and I would never do anything to harm her. . . . She was under our care at the time because her parents were unable to take care of her, and we were just providing a home for her.

These facts and circumstances as well as the defendant's statement reflect that the defendant, contrary to his assertion, was in a family supervisory relationship with the victim. Certainly, we cannot say that the defendant has overcome his presumptive position of private trust. The defendant has not met his burden of showing that the trial court improperly found that he occupied a position of private trust, which was abused when he committed the present offense. Accordingly, we conclude that the trial court properly applied this enhancement factor in imposing a nine-year sentence.

## IV. CONCLUSION

Based upon the foregoing and the record as a whole, we affirm the defendant's conviction and sentence.

_____
JOSEPH M. TIPTON, JUDGE

-6-