IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

## BARRY L. SPECK v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. P-19938     John P. Colton, Jr., Judge**

---

**No. W1999-00436-CCA-R3-PC - Decided July 19, 2000**

---

The petitioner, Barry L. Speck, appeals the trial court's denial of his petition for post-conviction relief. The state contends that the petition should have been dismissed because of the statute of limitations. The petitioner contends that he received the ineffective assistance of counsel because his attorney failed to use documents provided by the petitioner to impeach the state's witnesses and to provide an alibi for dates listed in the bill of particulars. We hold that the petition was properly considered on its merits, but we affirm the trial court's denial of post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIPTON, J., delivered the opinion of the court, in which RILEY and GLENN, JJ., joined.

Robert B. Gaia, Memphis, Tennessee, attorney for appellant, Barry L. Speck.

Paul G. Summers, Attorney General and Reporter; Mark E. Davidson, Assistant Attorney General; William L. Gibbons, District Attorney General; and Paul Thomas Hoover, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The petitioner, Barry L. Speck, appeals as of right from the Shelby County Criminal Court's denying him post-conviction relief from his 1994 conviction for aggravated rape and the resulting fifteen-year sentence. The conviction was affirmed on appeal. See State v. Speck, 944 S.W.2d 598 (Tenn. 1997). The petitioner contends that the trial court erred in finding that he received the effective assistance of counsel.

## STATUTE OF LIMITATIONS

First, we address the state's claim on appeal that the petition should have been dismissed as barred by the one-year statute of limitations.[1] See Tenn. Code Ann. § 40-30-202(a). The record reflects that the Tennessee Supreme Court judgment affirming the defendant's conviction was filed on April 28, 1997, and that the post-conviction petition was stamped filed in the trial court clerk's office on May 19, 1998. The state asserts that the trial court found the petition to be timely filed but did so without explanation and proof in the record to support such a finding. However, we believe the record reflects that the state has waived this issue in the context of this appeal because it failed to prevent the error it now claims occurred.

When the question of the timeliness of the petition was addressed in the trial court, the petitioner's attorney stated that he intended to prove through the petitioner's testimony that the petitioner had the petition ready to deliver to the prison officials in a timely fashion but that because of procedures requiring money in his account, presumably for postage purposes, the officials' receipt of the petition was delayed. We note that the petition states that it was being given to prison authorities for mailing on April 26, 1998, and reflects that it was notarized on April 27, 1998. The petitioner's attorney argued that the petitioner acted in good faith and effectively filed his petition timely.

At the beginning of the petitioner's testimony, the trial court stated that the record contained a discrepancy about the filing but that it was going to rule that the petition was properly filed. The state did not question this determination and offered no objection against the trial court proceeding with the evidentiary hearing. Obviously, if the state had put the petitioner to his proof, the record would contain the petitioner's testimony relevant to this issue. In this respect, we do not fault the trial court or the petitioner for the status of the record.

Pursuant to Rule 49(c), Tenn. R. Crim. P., and Rule 28, § 2(G), Tenn. S. Ct. R., in effect at the time the petition was filed, an incarcerated post-conviction petitioner's petition was deemed filed upon delivery to or receipt by the appropriate prison authorities for mailing. It is obvious that the trial court based its conclusion that the petition was timely filed upon these rules. Under these circumstances, we will not hold the trial court in error for proceeding with an evidentiary hearing on the merits of the petitioner's claims.

---

[1]We note that the state's brief gives the petitioner's claim of ineffective assistance as the only issue on appeal. Its statute of limitations claim appears only in the argument portion of the brief. Counsel is reminded that the state's right to raise issues upon the petitioner's appeal "does not end its obligations under the appellate rules to delineate the issue as a separate issue for appellate review . . . ." State v. Hayes, 894 S.W.2d 298, 300 (Tenn. Crim. App. 1994)

# BACKGROUND

The petitioner was prosecuted for the sexual penetration of a child under thirteen years of age. The Tennessee Supreme Court's opinion summarizes the proof at trial as follows:

The victim was in the second grade when he met the defendant, Barry Speck. With the permission of his mother, he began spending time with Speck watching movies, playing baseball and putt-putt golf, and attending scouting events. During the third and fourth grades, the victim occasionally spent the night with the defendant and slept with him on a couch.

Near the end of the victim's fourth grade school years, and during the summer of 1991, Speck started touching the victim's penis. The behavior escalated to mutual touching, and Speck and the victim masturbated one another. Although the victim was "confused" by the sexual acts, Speck told him not to tell anyone what was occurring because he would be "locked up in prison."

During the fifth grade, and the summer of 1992, the victim stayed with the defendant three or four nights per week. Speck began committing acts of fellatio on the victim, and eventually, he asked the victim to perform fellatio on him. Although he "didn't feel right about it," the victim complied because Speck acted "real cold and mean" if he refused. The victim's mother became concerned about the time the victim was spending with Speck and initially placed limits. Speck's response was anger and hurt. Later, in August of 1992, the mother told the victim he could no longer see the defendant. The victim responded by telling his mother about the sexual acts committed by Speck.

Tamara Carly, a friend of the victim's mother, testified that she initially thought Speck was like a "big brother" to the victim. After observing Speck and the victim in the summer of 1992, she began to think that the defendant's public behavior in touching and hugging the victim was excessive and inappropriate. After Speck was arrested, he left several taped telephone messages on Carly's answering machine in which he professed his love for the victim and his distress over the charges. According to Carly, he also left several audio tapes containing messages for the victim. In one message, Speck stated that the love between him and the victim was not "perverted" and that "had [he] known [he] was going to be accused of being perverted, [he] would have found another kid." In another tape, Speck described how he would spread his legs while urinating to allow the victim to urinate from behind him at the same time. Finally, Speck also said that he "was the only person who knew how many hairs the victim had on his testicles."

The defendant, Barry Speck, testified and admitted a close relationship with the victim, but denied that he had committed sexual acts. He acknowledged that the victim often stayed overnight at his apartment, but denied that any sexual acts were

committed. The defendant admitted leaving the phone messages and tape recordings with Tamara Carly.

Speck, 944 S.W.2d at 599.

## EVIDENTIARY HEARING

The petitioner's essential complaint against his trial attorney relates to the attorney's failure to use various documents that the petitioner provided to the attorney for the purpose of impeaching the victim and Ms. Carly and also of showing that he had an alibi for offense dates provided in the state's bill of particulars. The petitioner and the trial attorney testified at the evidentiary hearing.

Relative to the claims in this appeal, the petitioner testified that he provided his attorney copies of the victim's school report cards, documents regarding certain Boy Scout activities, and records of telephone answering machine messages. He said that while the trial court was questioning the victim to determine his competency as a witness, the victim told the trial court that he received A's, B's, and a few C's as grades. However, the report cards showed that the victim had two D's and an F. The petitioner said that the Boy Scout documents would have shown that any claimed assault on certain dates provided in the bill of particulars could not have occurred. As for the telephone records, the petitioner testified that they showed that the victim called him several times after the allegations came to light and that Ms. Carly's relationship with him was much more than she presented to the jury at the time of her testimony.

The trial attorney testified that he saw more detriment than benefit to cross-examining the victim before the jury regarding his grades. He reasoned that the jury would sympathize with the nervous, twelve-year-old victim if the defense attacked him about something that the attorney did not believe to be very material. The attorney noted that the school records reflected that the victim's grades had dropped only after the prosecution had begun, a circumstance that could explain the change in grades without helping the petitioner.

Relative to the Boy Scout documents, the attorney acknowledged that they could provide a defense to certain dates presented by the state in its bill of particulars. However, he noted that the date of the offense upon which the state relied at trial was not one of the dates presented in the bill of particulars. He indicated that the documents then lost much of their relevance, noting that the state alleged ongoing episodes over a period of years.

The attorney testified that the telephone records showed that the victim continued to call the petitioner but that the victim admitted to the calls at trial. As for showing a more extensive relationship between the petitioner and Ms. Carly, the attorney stated that her demeanor as a witness appeared hostile and that he believed that she showed more motivation for detrimental testimony against the petitioner than just concern for the victim. The attorney stated that he thought this attitude came across to the jury and that the telephone records contained little pertinent information. Also, he said he did not believe that her testimony was of great importance.

-4-

The trial court concluded that even if it took the petitioner's testimony as true, his attorney's conduct did not amount to a violation of the petitioner's right to the effective assistance of counsel. It found that the attorney's reasons for not acting upon the various documents that were provided to him constituted reasonable bases for his tactical decisions.

### INEFFECTIVE ASSISTANCE OF COUNSEL

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is upon the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings fundamentally unfair. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 369-72, 113 S. Ct. 838, 842-44 (1993). The Strickland standard has been applied, as well, to the right to counsel under Article I, Section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974) and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982) (holding that counsel's conduct will not be measured by "20-20 hindsight"). Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance. Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. See Hellard, 629 S.W.2d at 9; DeCoster, 487 F.2d at 1201.

Also, we note that the approach to the issue of the ineffective assistance of counsel does not have to start with an analysis of an attorney's conduct. If prejudice is not shown, we need not seek to determine the validity of the allegations of deficient performance. Strickland, 466 U.S. at 697, 104 S. Ct. at 2069.

The burden was on the petitioner in the trial court to prove by clear and convincing evidence the factual allegations that would entitle him to relief. Tenn. Code Ann. § 40-30-210(f). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. See Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). In this respect, the petitioner, as the appellant, has the burden of illustrating how the evidence preponderates against the judgment entered. Id. However, we review the trial court's conclusion

regarding the effectiveness of counsel <u>de</u> <u>novo</u> because it involves a mixed question of law and fact. <u>See</u> <u>State v. Burns</u>, 6 SW 3d 453, 461 (Tenn. 1999).

The petitioner argues that his attorney had no reasonable basis for failing to use any of the documents. He asserts that "the jury may have been swayed by the attack upon the credibility of the state's witnesses" if the attorney had impeached the witnesses with the documents available to him. We view this argument to be speculative given the record on appeal. The record supports a conclusion that the attorney's decisions were based upon professional judgment, and the petitioner has offered no proof that the impeaching documents would have materially affected the outcome of the trial.

Also, the petitioner argues that the attorney should have presented the documents supporting an alibi for dates presented in the bill of particulars even though the state relied upon a different date for the offense. He notes that the supreme court mentioned the lack of alibi proof at the trial regarding the bill of particular dates when it held that he was not prejudiced by the state's change of date for the offense. We do not believe that the supreme court's holding of no prejudice hinged upon the lack of alibi proof at trial. Also, the fact that certain dates originally asserted by the state could be shown to be incorrect would not necessarily affect a jury's view of the validity of the state's proof regarding the offense it elected to pursue. Thus, even if we assume that the attorney should have presented the alibi evidence for the other dates, we do not believe that the record justifies a conclusion that the failure to present such evidence probably affected the result of the trial or the appeal to the petitioner's detriment.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.