

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Knoxville November 16, 2016

## STATE OF TENNESSEE v. LAVAR JERNIGAN

**Appeal from the Circuit Court for Rutherford County**
**No. F-71221    Royce Taylor, Judge**

_____

### No. M2016-00507-CCA-R3-CD

_____

The Defendant, Lavar Jernigan, was convicted by a Rutherford County Circuit Court jury of six counts of especially aggravated sexual exploitation of a minor, Class B felonies. *See* T.C.A. § 39-17-1005 (2010) (amended 2013). The trial court sentenced the Defendant to ten years for each count and ordered partial consecutive service, for an effective sentence of thirty years at 100% service. On appeal, the Defendant contends that the trial court erred by (1) admitting in evidence a notebook containing text messages exchanged between the Defendant and the victim, (2) denying his motion to dismiss the indictment, and (3) denying his motion for a bill of particulars. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and TIMOTHY L. EASTER, JJ., joined.

Thomas D. Frost, Murfreesboro, Tennessee, for the appellant, Lavar Jernigan.

Herbert H. Slatery III, Attorney General and Reporter; Zachary T. Hinkle, Assistant Attorney General; Jennings H. Jones, District Attorney General; and Nathan Nichols, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Rutherford County Grand Jury returned a forty-five-count indictment that charged the Defendant with multiple counts of especially aggravated sexual exploitation of a minor, aggravated sexual exploitation of a minor, and sexual exploitation of a minor. The jury convicted the Defendant of six counts of aggravated sexual exploitation of a minor. No judgments reflecting the dispositions of the remaining thirty-nine counts are included in the appellate record. The record reflects, though, that the thirty-nine counts were not discussed at the trial and were not submitted to the jury.

## Pretrial Motions

## Double Jeopardy

Before the trial, the Defendant filed a motion to dismiss the indictment on the ground that his protection against double jeopardy had been violated. According to the Defendant's motion, the initial investigation in this case began in Lawrence County, and on April 10, 2013, arrest warrants were issued in Lawrence County, charging the Defendant with solicitation of a minor and sexual exploitation of a minor. During the investigation, Lawrence County Sheriff's Detective Nathan Neese interviewed N.R.[1], who admitted she had sent the Defendant sexually explicit photographs of herself. The Defendant's cell phone was seized at the time of the Defendant's arrest, and it was given to Murfreesboro Police Detective Tommy Roberts. According to the Defendant's motion, after the Lawrence County preliminary hearing, during which N.R. testified that she sent photographs of herself to the Defendant, the Lawrence County grand jury returned an indictment based upon testimony that the Defendant asked N.R. to send photographs of herself and that N.R. sent the Defendant photographs as he requested. On September 9, 2013, the Defendant pleaded guilty to one count of sexual exploitation of a minor by electronic means and received a two-year sentence to be served on probation. *See* T.C.A. § 39-13-529(b)(2) (Supp. 2012) (amended 2013).

Meanwhile, the Defendant's cell phone was analyzed by the Murfreesboro Police Department and may have later been sent to the Tennessee Bureau of Investigation (TBI) for analysis. Multiple deleted photographs were recovered from the Defendant's phone. These photographs are the subject of this Rutherford County case. In his motion to dismiss, the Defendant argued that the recovered photographs stemmed from the same criminal episode for which he had previously pleaded guilty in Lawrence County and that the Rutherford County prosecution violated principles of double jeopardy.

At the motion hearing, trial counsel told the trial court that the Lawrence County investigation revealed a relationship of a sexual nature between the Defendant and N.R., that the pair exchanged text messages, which included photographs depicting sexual content, and that the Defendant was arrested pursuant to the Lawrence County warrants. Counsel stated that the Defendant was interviewed by Lawrence County Detective Neese and Murfreesboro Police Detective Roberts at the Murfreesboro Police Department. Counsel stated, "If there were proof on this matter, the case would show that Detective Roberts . . . determined that little, if anything, had occurred in . . . Rutherford County, and felt it was a Lawrence County case."

---

[1] It is this court's policy to refer to minors and victims of sexual assault by their initials.

Trial counsel stated that during the Defendant's police interview, the Defendant said that all of the photographs he received from N.R. had been manually deleted from his cell phone. Counsel said that the Defendant's cell phone was given to Detective Roberts for the purposes of determining what photographs, if any, were on the phone, that the phone was provided to the TBI for analysis, and that the evidence at the Lawrence County preliminary hearing showed photographs were sent from the victim's cell phone in Lawrence County to the Defendant's cell phone in Rutherford County.

Trial counsel argued that all of the evidence related to this case was "on the table" in Lawrence County, including the photographs exchanged by text messages. Counsel argued that the Defendant's guilty plea in Lawrence County resolved this matter and that the Rutherford County indictment violated principles of double jeopardy. Counsel clarified that although law enforcement had not retrieved the deleted photographs until the analyst recovered them, Lawrence County knew the photographs existed and had possession of the Defendant's and N.R.'s cell phones. Counsel stated that in the Lawrence County prosecution, the knowledge of the photographs was used as the basis for the Defendant's guilty plea, that the same photographs were being used to prosecute the Defendant in Rutherford County, and that the present prosecution violated principles of double jeopardy.

The prosecutor argued that the basis for the Lawrence County prosecution was the Defendant's sending N.R. nude photographs of himself and photographs of the Defendant's engaging in masturbation. The prosecutor noted that the Defendant was also charged in Lawrence County of solicitation for statutory rape and that the Defendant was not indicted in Lawrence County for N.R.'s sending the Defendant sexually explicit photographs. The Prosecutor stated that the Rutherford County charges were based upon N.R.'s sending the Defendant nude photographs of herself at the Defendant's request. The prosecutor stated that both counties had jurisdiction and that this prosecution was based upon conduct that occurred in Rutherford County.

The trial court relied upon *State v. Watkins*, 362 S.W.3d 530 (Tenn. 2012), and *Blockburger v. United States*, 284 U.S. 299 (1932), in determining that the dual prosecutions did not violate principles of double jeopardy. Relative to the legislative intent, the court could not ascertain whether our legislature intended to allow multiple convictions for the relevant statutes. The court noted that the State conceded in its written response to the motion that if the Defendant were convicted in Rutherford County, the convictions in both counties would have been the result of the same act or transaction. The trial court stated that the Defendant pleaded guilty in Lawrence County to exploitation of a minor by electronic means, which required proof that the Defendant displayed to a minor sexual activity or simulated sexual activity, and that the indicted offenses in Rutherford County did not require proof that the Defendant displayed anything to a minor. The court determined that the

indicted offenses in Rutherford County required proof that the Defendant possessed certain material involving a minor and that the Defendant "did certain acts or intended to do certain acts with the material." Therefore, the court concluded that the Rutherford County prosecution did not violate principles of double jeopardy.

## Bill of Particulars

Also before the trial, the Defendant filed a motion to require the State to furnish information regarding (1) the date and time each photograph was sent to the Defendant's cell phone from N.R.'s cell phone, (2) the location of N.R. and her phone when she sent each photograph to the Defendant's phone, (3) the date and time each photograph was received by the Defendant's phone, (4) the location of the Defendant's phone when each photograph was received by the Defendant's phone, (5) the date and time each photograph was deleted from the Defendant's phone, (6) the location of the Defendant's phone when each photograph was deleted from the Defendant's phone, (7) the date, time, and location of the Defendant when he promoted, permitted or assisted N.R. in the production of the photographs depicting the minor engaged in sexual activity, (8) the date, time and location of the Defendant when he knowingly transported or exchange the material depicting the minor engaged in sexual activity, and (9) the date, time and location of the Defendant when he knowingly possessed material depicting the minor engaged in sexual activity.

At the pretrial hearing, trial counsel argued that the photographs had been deleted from the Defendant's cell phone, that the photographs were recovered using sophisticated software, and that the phone was returned to the Defendant after the analysis. Counsel argued that the Defendant did not possess the photographs because the Defendant could not access the photographs. Counsel stated that the requested information was relevant to whether the photographs were ever possessed by the Defendant when he was in Rutherford County.

The prosecutor stated that he did not possess the information requested by trial counsel. The prosecutor argued that he did not have to establish an exact date of the photographs, that the Defendant lived in Rutherford County, and that the Defendant's cell phone was seized by the police when the Defendant was in Rutherford County. The prosecutor stated that it was a question of fact for the jury to determine whether the Defendant possessed the photographs when the Defendant was in Rutherford County. The prosecutor noted that he had provided counsel with all the evidence the State intended to produce at the trial.

The trial court determined that the Defendant was not entitled to a bill of particulars. The court found that the State was not required to provide the Defendant with the date and time of the photographs or the location of the Defendant or his cell phone, that the Defendant

-4-

had seen the photographs, and that the Defendant knew the identity of the victim and the time period during which the alleged offenses occurred. The court found that the State had provided the Defendant with all the information in its possession and that the State believed it could establish venue at the trial by showing the Defendant lived in Rutherford County at the time of the offenses. The court determined that the Defendant had sufficient information to prepare an adequate defense.

## Trial

N.R. testified that she was age sixteen in late 2012, that she lived in Lawrence County, and that she met the Defendant when she was age thirteen. She said that the Defendant worked with the school band director, that the Defendant choreographed the school's band and color guard movements on the football field, and that the Defendant was a mentor to many of the students. She said that the band and color guard performed annually at Middle Tennessee State University (MTSU) in Rutherford County.

N.R. testified that in October 2012, the Defendant gave her his email address and that he told her to contact him if she became stressed and needed advice. She recalled that she had recently become the leader of the color guard, that her grandfather had died, that a classmate had died, and that she had been stressed. She said the Defendant knew about the stressful events in her life at this time. She said that two weeks after the Defendant gave her his email address, she sent an email to the Defendant because she was stressed about being the leader of the color guard for the first time in a competition. She said that a few weeks later, the topics of their emails changed. She said they began talking on the telephone by late December. She said she saved the Defendant's cell phone number under the name Babooshka.

N.R. testified that one day after color guard practice, she walked down the band hallway and entered the color guard closet to place her flag inside, that the Defendant followed her to the small closet, that they both walked inside the closet, that the Defendant closed the door, and that the Defendant asked if "there was anywhere [they] could meet." N.R. said that she and the Defendant agreed to meet at a nearby park, that they left the school in their respective vehicles, and that they drove to the park. She said she was age sixteen at this time. She said they sat at a picnic table and discussed the color guard. She said the Defendant provided her with guidance and did not touch her.

N.R. testified that her relationship with the Defendant became "physical" after a football game at her school. She recalled that she and the Defendant drove their respective vehicles to "the back road" near the school, that they parked their vehicles, and that she got inside the Defendant's car. She said that they talked and that the Defendant placed his hand on her leg. She recalled another incident that occurred while she was at a competition at

MTSU. She said that she and the other members of the color guard were walking to a room to rehearse before the competition, that she held open the door for the color guard members, that the Defendant motioned for her to come to another hallway, and that she followed him to the hallway. She said that they entered a closet-type room, that the Defendant kissed her, and that he placed his hands on her buttocks.

N.R. testified that by the time of the MTSU incident, she and the Defendant had exchanged text messages containing sexually explicit material. She said the messages discussed "what we could do to each other" and contained photographs of each of them. She said that the first photograph she sent the Defendant was of her wearing only a bra and a skirt and that the photograph was her idea. She said she eventually sent the Defendant photographs of her breasts and vagina. She said she sent the photographs of her vagina at the Defendant's request. She said the Defendant sent her photographs of his penis and a video recording of his masturbating. She identified the recording, which was played for the jury.

N.R. testified that she and the Defendant sent text messages daily and agreed that she and the Defendant probably exchanged approximately 6000 text messages between October 9, 2012, and February 9, 2013. She said that she sent the Defendant messages when she was at school and at home and that they exchanged messages more frequently after school. She said they exchanged messages until 10:00 p.m. She said that the Defendant was usually at home when they exchanged messages at night and that she knew the Defendant's location because the Defendant told her he was home. She said she sent the Defendant photographs of herself once or twice per week. She identified seven photographs that she took and sent at the Defendant's request. The photographs showed the Defendant's and N.R.'s faces, N.R.'s standing in front of a mirror naked from the waist up, N.R.'s face and breasts, and N.R.'s vagina.

N.R. identified a series of photographs she received from the Defendant in text messages. She testified that she occasionally requested photographs from the Defendant. She agreed that the Defendant sent her photographs of his penis after she sent the Defendant photographs of her breasts and vagina. She recalled that their relationship was exposed after her friend saw "some things" on N.R.'s cell phone and questioned N.R. N.R. said she told her friend about N.R.'s relationship with the Defendant. N.R. recalled that a parent who saw N.R. send a photograph to the Defendant demanded N.R. explain the photograph.

On cross-examination, N.R. testified that she had only been to Rutherford County about six times and that she did not see the Defendant each time she went to Rutherford County. She said she had seen the Defendant in Lawrence County only ten times. She denied the Defendant touched her breasts or vagina and denied having sexual intercourse. She agreed that she had not communicated with the Defendant since April 10, 2013, and that the photographs she previously identified were taken before April 10.

-6-

N.R. testified that she knew the Defendant was arrested and prosecuted in Lawrence County, that she appeared in court, and that she did not testify at the preliminary hearing or before the grand jury. She said that she did not discuss this case with Lawrence County Detective Neese and that she spoke briefly to the Lawrence County prosecutor when she appeared in court. She said her statement to the Lawrence County prosecutor was similar to her testimony, that she spoke to the prosecutor in 2013, that she thought this matter was resolved, and that she did not want to testify at this trial.

On redirect examination, N.R. clarified that she was at the Lawrence County courthouse when the preliminary hearing occurred but that she did not enter the courtroom. She said that the Lawrence County prosecutor's office treated her as though she were a child and that the prosecutor spoke mostly to her mother.

On recross-examination, N.R. testified that she thought the Defendant meant something to her and that she was shocked at this prosecution. On further redirect examination, she said that initially, she was sad and heartbroken but that she became angry.

Murfreesboro Police Detective Jennifer West testified that since 2010, her work focused on extracting information from small electronic devices, including cell phones. She said that although a person might delete data from a phone, the data might not always be deleted. She said data, including photographs and text messages, might remain on the phone after the person had deleted the items. She stated that specific to the iPhone, photographs and text messages might be sent to an encrypted area on the phone after the person deleted the items.

Detective West testified that she analyzed the Defendant's and N.R.'s cell phones at the request of Lawrence County Sheriff's deputies. She stated that she recovered a photograph from the Defendant's phone showing N.R. standing in front of a mirror and naked from the waist up, that the photograph was "created" on the Defendant's phone on November 6, 2012, that the photograph was accessed on the Defendant's phone on the same date, and that the same photograph, previously identified during N.R.'s testimony, was retrieved from N.R.'s phone. Detective West stated that text messages were exchanged before and after the photograph was sent and received, that the message from the Defendant after receiving the photograph stated, "Nice," that the message from N.R. stated, "Thank you," and that the message from the Defendant stated, "No problem."

Detective West testified that a photograph of the victim's breasts was created on October 30, 2012, that the photograph was found on the victim's and the Defendant's cell phones, and that a series of text messages were exchanged between the Defendant and the victim regarding the photograph. Detective West stated that a message from the Defendant

requested a photograph, that the victim responded she would send a photograph after 10:00, that the photograph was sent from the victim's phone to the Defendant's phone at approximately 10:07, and that the Defendant responded "nice."

Detective West testified that two photographs of the victim standing in front of a mirror naked from the waist up were found on the victim's and the Defendant's cell phones. Detective West stated that the photographs of the victim's vagina were found on the Defendant's phone. Detective West stated that one of the photographs showing the victim's vagina was created on January 24, 2013, and that her analysis showed an exchange of text messages between the Defendant and the victim's phones. Relative to a second photograph showing the victim's vagina, Detective West stated the photograph was sent from the victim's phone to the Defendant's phone about thirty minutes after the first photograph of the victim's vagina. Detective West stated that a third photograph of the victim's vagina was created on January 25, 2013, and that messages were exchanged before and after the photograph was created. Detective West said that her analysis also showed when a photograph was last accessed but that she could not determine when a photograph was deleted or backed up.

Detective West testified relative to a "voluminous" notebook, which was received as an exhibit, containing text messages found on the Defendant's and the victim's cell phones. Detective West read to the jury numerous messages exchanged between the Defendant and the victim. Detective West said that on October 21, 2012, the Defendant's cell phone received a message, that the message was read, and that the Defendant's response to the victim included a frowning face and stated, "[N]aked, please, LOL." Detective West stated that the victim responded that she was working and that she could not send a photograph. Detective West stated that the Defendant responded with a frowning face and that the victim apologized and stated, "Sorry, you have to earn a naked picture . . . . You don't get one yet." Detective West said the Defendant's response was a frowning face.

Detective West testified relative to an October 22, 2012 text message exchange between the Defendant's and the victim's cell phones. In the exchange, the victim stated she missed the Defendant, the Defendant asked the victim how much she missed him and asked her to show him through a photograph, and the victim stated she was sorry. The Defendant responded that the victim was not sorry and that she "should prove it."

Detective West testified regarding a text message exchange between the Defendant and the victim on October 24, 2012. In the exchange, the Defendant requested a photograph and stated that he "want[ed] a p---- pic so badly, LOL." Relative to October 27, Detective West stated that the Defendant sent a text message to the victim stating, "[G]reat pic. I love your stomach . . . . Can you please take off your pants and take another one, please."

Detective West testified regarding a text message exchange between the Defendant and the victim on October 28, 2012. In the exchange, the victim stated, "LOL, tank tops is all I ever wear with sweat pants," and the Defendant responded, "[S]o pull out them [breasts] and send [a] pic, baby, LOL . . . just playing . . . but your [breasts] are nice." In another exchange later the same day, the victim asked, "[W]hat do you want a pic of," and the Defendant responded that he wanted a photograph of "my" breasts. The victim stated, "[N]o sorry. And who says they are yours," and the Defendant responded, "[Y]ou did when you said you loved me. You did when you said you're jealous. You did when you said I want my chocolate teddy bear."

Detective West testified regarding a text message exchange between the Defendant and the victim on October 30, 2012. In the exchange, the Defendant asked, "[W]here my pic," and the victim responded, "[P]ic first, and I'll call." Detective West stated that a photograph was sent from the victim's cell phone to the Defendant's phone, after which the Defendant responded, "Nice. When did you take this one. Can I get one of more stomach and [breasts], please?" Detective West stated that the photograph exchange was one of the photographs previously received as an exhibit.

Detective West testified that on November 1, 2012, the Defendant sent the victim the following text message: "finger your p---- once, and send me a pic of . . . your fingers, please." Detective West stated that on November 25, the victim sent the Defendant a photograph, that the Defendant responded, "Nice pic . . . but it's not the pic I'm . . . waiting for," that the victim asked what type of photograph the Defendant wanted, and that the Defendant stated, "[P]----, fingers, remember. Naked body, remember."

Detective West testified that on December 21, 2012, another text message exchange occurred between the Defendant and the victim. In the exchange, the Defendant requested a photograph of her vagina, but the victim stated that she was not in a good mood but that she still loved the Defendant.

Detective West testified that on February 18, 2013, another text message exchange occurred between the Defendant and the victim. In the exchange, the Defendant stated that he was looking at a photograph of the victim, and the victim inquired whether the Defendant was masturbating. The Defendant admitted he was, and the victim responded that she wished she could facilitate his orgasm. Detective West stated that later the same day the Defendant sent the victim a message stating, "[B]ased on you pic this morning, your p---- looks nice and clean. Did you shave?" Again on February 18 and on February 23, the Defendant sent messages requesting a photograph of the victim's vagina, but the victim

declined. The remainder of the Defendant's and the victim's messages were related to sexually explicit topics.

Detective West testified that on February 25, 2013, the Defendant and the victim exchanged text messages related to their deleting photographs from their cell phones. In the exchange, the victim said she had deleted the photographs from her phone, the Defendant reminded her to delete the photographs from the "trash," and the victim stated she had.

Detective West testified that on March 3, 2013, the Defendant and the victim exchanged text messages and that the Defendant requested a photograph of the victim's vagina. The victim agreed to send a photograph after she finished bathing. The Defendant continued requesting a photograph, the victim responded for the Defendant to "calm down," and the Defendant responded, "[N]ice." Detective West testified regarding a March 14, 2013 text message exchange in which the Defendant requested another photograph of "something" inside her vagina and suggested two objects.

Detective West testified regarding an April 1, 2013 text message exchange. In the exchange, the Defendant stated, "Nice," and the victim asked if the Defendant liked "it." The Defendant responded, "I thought I said no more pics. I'm not trying to go to jail for child porn," and the victim stated, "I thought you would like it, baby." The Defendant stated he "loved . . . it." An April 7, 2013 text message exchange reflected that the Defendant thought a woman was suspicious and "fishing for information," told the victim to delete all text message and call log information from her phone, and asked the victim to find out why the woman wanted the victim to call the Defendant. The victim responded she had deleted the relevant information on her phone and agreed to speak to the woman, and the Defendant expressed concern about going to jail.

Detective West testified that she did not know what happened to the Defendant's and the victim's cell phones after she concluded her analyses but that generally, cell phones were not returned to owners if child pornography were found on a device.

On cross-examination, Detective West testified that she was asked by Lawrence County law enforcement to analyze the cell phones and that such requests were not uncommon. She said her analyses began on April 11, 2013, and ended on April 23, 2013. She said that the phones were returned to Lawrence County Detective Neese on April 23 and that her reports were finalized in May 2013. She acknowledged that the proceedings in Lawrence County concluded in September 2013 and said that she did not recall speaking with Detective Neese after confirming he received her reports in May. She said she also sent a copy of her reports to Murfreesboro Police Detective Roberts. Detective West denied appearing before the Rutherford County Grand Jury.

Murfreesboro Police Detective Tommy Roberts testified that he interviewed the Defendant, along with Lawrence County Detective Neese and Detective Neese's partner, at the Murfreesboro Police Department. The recording of the interview was played for the jury.

In the recording, the Lawrence County detective told the Defendant he was under arrest and read the Defendant his *Miranda* rights, and the Defendant acknowledged he understood his rights. The Defendant discussed his role in the school system and stated that he interacted casually with the students but attempted not to "cross my line." The detective stated that the Defendant probably knew why the detective was questioning him, and the Defendant said the interview was probably related to the victim, who the Defendant described as a "sweet girl." The Defendant said that he and the victim had a connection, that he thought of the victim as his daughter, and that he loved the victim. He said that they exchanged emails and text messages daily and that he attempted to be a father figure. He said the substance of their conversations was about school and making good life choices.

The Defendant denied having an inappropriate relationship with the victim but admitted that some people "jokingly called" him the victim's boyfriend and that he jokingly called the victim his girlfriend. He said that his contact with the victim's mother was limited to band functions and that his last contact with the victim had been the previous day. He said that the victim's "pet name" for him was "baby" or "boo" and that his name for the victim was Vanessa. He explained that he had difficulty remembering names and that he "renamed" the victim Vanessa.

The Defendant admitted sending the victim photographs of his face and of him and his son at the beach. He denied sending any additional photographs but said he was "not positive" he had not sent any additional photographs. When pressed for additional information about his relationship with the victim, the Defendant admitted their relationship had "escalated." The Defendant stated that "it" started when the victim said she loved him and that they exchanged "sexual pictures" of his and the victim's "private parts." He admitted hugging and kissing the victim on the cheek at a "concert festival" in Murfreesboro.

Relative to the content of the text messages, the Defendant said that the victim wanted to have sexual intercourse but that he told the victim they had to wait until she was age eighteen. He said that they discussed various sexual acts but that he wanted to wait until she was age eighteen. He said that the victim asked for a video recording of him "ejaculating," that he sent a recording, and that he was "stupid." He denied the victim sent him any recordings.

The Defendant stated that he and the victim talked on the telephone, as well, and that they discussed life and the Defendant's children. He said that they had "phone sex" but that they did not have physical sexual contact. He said he would never hurt the victim, whom he

called a child. He said that they met at a park on one occasion, that they discussed the victim's previous boyfriend, that the victim cried, that he hugged her, and that he told her he loved her. He provided his cell phone number and told her to call him if she needed anything. He said that he had only been alone with the victim on one other occasion, that they sat inside his car after a football game, and that he hugged her. The Defendant stated that he and the victim never had any sexual contact and that he did not have sexual relations with children.

When asked why the Defendant would tell the victim that she was "good at sexual activity," the Defendant stated that he assumed she was good at oral sex because she sucked on his finger. He said the victim placed his finger inside the her mouth. The detective referenced the sexually explicit content of their text messages, and the Defendant denied any sexual contact with the victim. The Defendant consented to a forensic examination of his cell phone. He said that the victim asked if he wanted her to send a photograph of her vagina, that he told her no initially, and that he ultimately told her to send a photograph. He said he truly cared about the victim.

Detective Roberts testified that after the interview, the Defendant was booked at the Rutherford County Jail and was released into Lawrence County custody. Detective Roberts recalled that the Defendant's computer was seized and sent to the TBI for analysis and that Detective Neese said the computer did not contain any unauthorized material.

On cross-examination, Detective Roberts testified that he was the only person who testified before the Rutherford County Grand Jury in February 2014. He said that after the Defendant's arrest, his involvement in this case was limited to talking to Detective West about her findings. He agreed he reviewed Detective West's reports but said he did not speak to the victim.

Lawrence County Sheriff's Detective Nathan Neese testified for the defense that he learned a concerned parent at the victim's school thought the Defendant and the victim were having an inappropriate relationship. On April 10, 2013, Detective Neese spoke to the victim and her mother and took the victim's cell phone with her mother's consent. Detective Neese said that he was told deleted photographs might remain on the victim's phone. He said that based upon his investigation, he obtained an arrest warrant in Lawrence County for sexual exploitation of a minor by electronic means. The detective read from the affidavit supporting the first arrest warrant:

On April the 10th, 2013, I did interview the minor victim in this case. And she did confirm there was an inappropriate relationship occurring between her and [the Defendant]. [The Defendant] did request her to send

pictures of her to him, and also described what sexual acts he would like to perform on her.

> [The Defendant] did send videos of himself to the minor child while he was masturbating and pictures of his penis. [The Defendant] did engage in conversations with the minor that were sexually explicit in nature, and did send pictures of his face to her phone.

Detective Neese testified that he also obtained an arrest warrant for solicitation of a minor because the Defendant requested that the victim send him sexually explicit photographs of herself. The detective read from the affidavit of the second arrest warrant.

> April the 10th, 2013, I did interview the minor victim in this case. And she did confirm there was an inappropriate relationship occurring between her and [the Defendant]. [The Defendant] did request her to send pictures of her to him, and also describe[d] what sexual acts he would like to perform on her.

Detective Neese said that he knew photographs had been exchanged between the Defendant and the victim and that the arrest warrants were based upon text messages and telephone conversations.

Detective Neese testified that he arranged to serve the Defendant with the arrest warrants in Rutherford County with the assistance of Detectives Roberts, Lawson, and Maples. Detective Neese said he served the Defendant with the arrest warrants and took the Defendant into custody. Detective Neese agreed that the Defendant was cooperative, that the Defendant consented to a search of his cell phone, and that the Defendant told the detective some of the material might have been deleted from the phone.

Detective Neese testified that he probably reviewed Detective West's reports before he presented the case to the Lawrence County Grand Jury, that he provided all of the evidence to the Lawrence County prosecutor, which would have included Detective West's reports, and that he did not know why counsel might not have received the reports during the discovery process.

On cross-examination, Detective Neese reviewed the portions of the Code addressing the offenses of solicitation of a minor, sexual exploitation of a minor by electronic means, and aggravated sexual exploitation of a minor. Detective Neese acknowledged that the offenses for which the Defendant was convicted in Lawrence County focused on displaying "obscene material" to a minor and that the offenses in the present case focused on having a minor participate in the creation of pornography. Detective Neese stated that his

-13-

investigation showed the Defendant lived in Rutherford County and commuted periodically to Lawrence County for work.

Upon this evidence, the Defendant was convicted of six counts of especially aggravated sexual exploitation of a minor. The trial court sentenced the Defendant to an effective thirty-year sentence. This appeal followed.

## I.     Notebook Containing Text Message Exchanges

The Defendant contends that the trial court erred by permitting the State to present evidence of the notebook containing text messages exchanged between the Defendant and the victim, from which Detective West read during her testimony. The Defendant argues that the material was never provided to the defense or disclosed before it was introduced at the trial. The State responds that the Defendant waived appellate review of this issue because he did not object contemporaneously at the trial and that alternatively, an inadequate record prevents review for plain error.

As a preliminary matter, the Defendant asserts in his brief that the defense's discovery request pursuant to Tennessee Rule of Criminal Procedure 16 was filed on February 24, 2014, and that the request included the defense be allowed to inspect all books, papers, documents, photographs, and tangible objects. However, the Defendant's discovery request does not appear in the appellate record. The notebook containing more than 6000 text messages exchanged between the Defendant and the victim is likewise not included in the appellate record, although the record reflects that Detective West read some of the messages during her trial testimony. To further complicate appellate review, counsel raised this issue in his motion for a new trial, but the transcript from the motion hearing is not included in the appellate record. The trial court's written order denying the motion merely incorporates its findings from the hearing and does not recite individual findings of fact and conclusions of law.

The Defendant has the burden of preparing a fair, accurate, and complete account of what transpired in the trial court relative to the issues raised on appeal. *See, e.g.*, *State v. Bunch*, 646 S.W.2d 158, 160 (Tenn. 1983). This includes the obligation to have a transcript of the evidence or proceedings prepared. *See* T.R.A.P. 24(b). "When the record is incomplete, or does not contain the proceedings relevant to an issue, this [c]ourt is precluded from considering the issue." *State v. Miller*, 737 S.W.2d 556, 558 (Tenn. Crim. App. 1987). Likewise, "this [c]ourt must conclusively presume that the ruling of the trial court was correct in all particulars." *Id*. (citing *State v. Jones*, 623 S.W.2d 129, 131 (Tenn. Crim. App. 1981); *State v. Baron*, 659 S.W.2d 811, 815 (Tenn. Crim. App. 1983); *State v. Taylor*, 669 S.W.2d 694, 699 (Tenn. Crim. App. 1983)); *see State v. Ivy*, 868 S.W.2d 724, 728 (Tenn. Crim. App. 1993). The Defendant has failed to prepare an adequate record for this issue, and

he is not entitled to relief.

We have not overlooked the State's argument that the defense failed to object contemporaneously to the admission of the text message exchanges. The record reflects that although trial counsel mentioned during his cross-examination that he had not seen "these" previously, counsel did not object when the State requested that the notebook be received as an exhibit or when Detective West read from the messages during her testimony. Therefore, the inadequate record notwithstanding, appellate review of this issue is waived for the defense's failure to object contemporaneously to the admission of the evidence. *See* Tenn. R. Evid. 103(a) ("Error may not be predicated upon a ruling which admits . . . evidence unless a substantial right of the party is affected, and . . . a timely objection or motion to strike appears of record, stating the specific ground of objection[.]"); *see also* T.R.A.P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a part responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."). The Defendant is not entitled to relief.

## II.     Motion to Dismiss

The Defendant contends that the trial court erred by denying his motion to dismiss the indictment on the ground that the Rutherford County prosecution violated principles of double jeopardy. He argues that the Lawrence County prosecution prohibits his convictions in Rutherford County. The State responds that the dual prosecutions do not violate principles of double jeopardy because the Defendant was not convicted of the same offenses in both jurisdictions.

The Fifth Amendment of United States Constitution and Article I, section 10 of the Tennessee Constitution provide that no person should be put "in jeopardy of life or limb" twice for the same offense. U.S. Const. amend. V, Tenn. Const. art. I, § 10. Double jeopardy principles proscribe multiple punishments for the same conduct. *See State v. Watkins*, 362 S.W.3d 530, 541-42 (Tenn. 2012). In *State* v. *Watkins*, 362 S.W.3d 530 (Tenn. 2012), our supreme court abandoned the analysis provided previously in *State v. Denton*, 938 S.W.2d 373 (Tenn. 1996), and adopted the "same elements" analysis delineated by the United States Supreme Court in *Blockburger v. United States*, 284 U.S. 299, 304 (1932). Therefore, whether dual convictions violate double jeopardy principles requires a determination of "whether the convictions arise from the same act or transaction." *Watkins*, 362 S.W.3d at 557. If the convictions arise from the same act or transaction, the second inquiry is whether the elements of the offenses are the same or whether one offense is a lesser included offense of the other. *Id*. If the elements are the same or one offense is a lesser included offense of the other, dual convictions violate double jeopardy principles. *Id*. Appellate courts "will presume that multiple convictions are not intended by the General Assembly" when the elements of the offenses are the same or when one offense is a lesser included offense of the other. *Id*.

As a preliminary matter, the Defendant does not address the statutory intent of the relevant offenses and whether the General Assembly intended to prevent multiple prosecutions of the same. We note that the statute defining especially aggravated sexual exploitation of a minor reflects that our legislature contemplated multiple convictions for sexual offenses. The statute reads, "Nothing in this section shall be construed as limiting prosecution for any other sexual offense under this chapter, nor shall a joint conviction under this section and any other related sexual offense, even if arising out of the same conduct, be construed as limiting any applicable punishment, including consecutive sentencing[.]" T.C.A. § 39-17-1005(d). In any event, we will determine whether the dual convictions violate principles of double jeopardy pursuant to *Watkins*.

Relative to whether the Rutherford and Lawrence County convictions arise from the same act or transaction, the State asserts on appeal that the offenses did not arise from the same act or transaction. Specifically, the State argues that although the conviction offenses in both counties involved the same victim and time frame, the offenses involved different conduct. We note, though, that the State conceded in its written response to the Defendant's motion to dismiss in the trial court that "the Rutherford County and Lawrence County offenses arose out of the same criminal transaction."

We conclude that the Lawrence County and Rutherford County prosecutions were the result of the same transaction. The Rutherford County convictions focus on the Defendant's requesting that the victim send him sexually explicit photographs of herself. The record reflects that during this transaction, which occurred during the same time frame as the Lawrence County convictions, the Defendant sent the victim photographs of his penis and a video recording of his masturbating. The dates of the offenses contained in the Lawrence County indictment were between October 2012 and April 2013. Although the Rutherford County indictment did not include the dates of the charged offenses, the judgments reflect the dates of the offenses were also between October 2012 and April 2013.

Relative to whether the conviction offenses contain the same elements, the record reflects that in Lawrence County, the Defendant pleaded guilty to sexual exploitation of a minor by electronic means. *See* T.C.A. § 39-13-529(b)(2) (2010) (amended 2013). The offense is defined as follows:

It is unlawful for any person eighteen (18) years of age or older, directly or by means of electronic communication, electronic mail or Internet service, . . . to intentionally . . . [d]isplay to a minor, or expose a minor to, any material containing sexual activity or simulated sexual activity that is patently offensive, as defined in § 39-17-1002, where the purpose of the display can

-16-

reasonably be construed as being for the sexual arousal or gratification of the minor or the person displaying that material[.]

In Rutherford County, the Defendant was convicted of especially aggravated sexual exploitation of a minor. *See* T.C.A. § 39-17-1005(a)(1). The offense is defined, in relevant part, as follows:

It is unlawful for a person to knowingly promote, employ, use, assist, transport or permit a minor to participate in the performance of, or in the production of, acts or material that includes the minor engaging in . . . [s]exual activity[.]

Promote means "to finance, produce, direct, manufacture, issue, publish, exhibit or advertise, or to offer or to agree to do those things." *Id*. § 39-17-1002(6). Sexual activity is defined, in relevant part, "[l]ascivious exhibition of the female breast or the genitals." *Id*. § 39-17-1002(8)(G).

Relative to the Lawrence County conviction, the State was required to prove beyond a reasonable doubt that the Defendant, who was age eighteen or older, by electronic communication intentionally displayed to N.R., a minor, any material containing sexual activity or simulated sexual activity that was patently offensive for the purpose of the Defendant's or N.R.'s sexual arousal or gratification. Relative to the Rutherford County convictions, the State was required to show that the Defendant knowingly promoted or directed N.R., a minor, to participate in the production of material that included N.R. engaging in sexual activity.

A reading of the statutes shows that although the especially aggravated sexual exploitation of a minor convictions required the State to establish that the Defendant persuaded or encouraged the victim to take sexually explicit photographs of herself, no such proof was required for the sexual exploitation of a minor by electronic means conviction. The crux of the sexual exploitation of a minor by electronic means conviction is the Defendant's displaying to the victim material containing sexual activity or simulated sexual activity that is patently offensive for the purpose of sexual arousal or gratification. In essence, the Defendant's sending the victim a photograph of his penis and a video recording of him engaged in masturbation is the prohibited conduct relative to sexual exploitation of a minor by electronic means. The Defendant's requesting and encouraging the victim to produce and send him photographs of the victim's vagina and breasts is the prohibited conduct relative to especially aggravated sexual exploitation of a minor. The offenses contain different elements, and therefore, convictions for both offenses do not violate principles of double jeopardy.

### III. Bill of Particulars

The Defendant contends that the trial court erred by denying his request for a bill of particulars regarding the transmitted materials obtained from the Defendant's and the victim's cell phones. He argues that the indictment failed to specify the time, date, or place of the alleged offenses, that without a bill of particulars containing this information, he was unable to establish that he did not receive photographs or text messages while in Rutherford County, and that he still remains unaware of the date, time, and place of the offenses. The State responds that the trial court properly denied the motion because the location when he possessed the photographs was immaterial to the charged offenses and that the State was only required to prove his location when the Defendant encouraged the victim to produce the images.

Tennessee Criminal Procedure Rule 7(c) states that upon a "defendant's motion, the court may direct the district attorney general to file a bill of particulars so as to adequately identify the offense charged." A bill of particulars serves to provide information about the details of the charged offense, if such information is necessary to prepare a defense, to prevent "prejudicial surprise" at a trial, and to protect a defendant against double jeopardy. *State v. Sherman*, 266 S.W.3d 395, 408-09 (Tenn. 2008); *see State v. Speck*, 944 S.W.2d 598, 600 (Tenn. 1997); *State v. Byrd*, 820 S.W.2d 739, 741 (Tenn. 1991); *State v. Hic*ks, 666 S.W.2d 54, 56 (Tenn. 1984). However, a bill of particulars is limited to information needed to defend against the allegations contained in the indictment, not a tool used for discovery. Tenn. R. Crim. P. 7(c), Advisory Comm'n Cmts.

As a preliminary matter, we note that although the appellate record contains judgment forms for the six counts for which the Defendant was convicted, the record does not contain judgment forms for the remaining thirty-nine counts. To the extent, if at all, the Defendant raises the bill of particulars issue regarding these thirty-nine counts, this court lacks jurisdiction to consider on appeal whether the trial court erred by denying the motion. *See* T.R.A.P. 3(b) ("In criminal actions an appeal as of right by a defendant lies from any judgment of conviction entered by a trial court from which an appeal lies to the . . . Court of Criminal Appeals[.]").

Relative to the six counts of especially aggravated sexual exploitation of a minor for which the Defendant was convicted, the indictment alleged the Defendant "unlawfully and knowingly [did] promote, permit, or assist a minor to participate in the performance of, or in the production of, acts or material which includes the minor engaged in sexual activity[.]" *See* T.C.A. § 39-17-1005(a)(1). Promote means "to finance, produce, direct, manufacture, issue, publish, exhibit or advertise, or to offer or to agree to do those things." *Id*. § 39-17-1002(6). Sexual activity is defined, in relevant part, "[l]ascivious exhibition of the female breast or the genitals." *Id*. § 39-17-1002(8)(G).

Therefore, the evidence required to obtain a conviction for especially aggravated sexual exploitation of a minor was limited to the Defendant's requesting and directing the victim to take photographs of her vagina and breasts and to send the photographs to the Defendant. Although the Defendant argues that without a bill of particulars he was unable to establish that he did not receive photographs or text messages while in Rutherford County, this information was irrelevant and immaterial to the charged offenses in this case. Furthermore, the Defendant's location at the time he requested the photographs is not an element of the offense. Rather, the Defendant's location when he sent the requests for the explicit photographs was necessary to establishing venue by a preponderance of the evidence. Therefore, the Defendant's location when he possessed or deleted the photographs from his cell phone was immaterial to the charged offenses in the present case. We conclude that the trial court did not err by denying the Defendant's request for a bill of particulars.

In consideration of the foregoing and the record as a whole, we affirm the judgments of the trial court.

_____
ROBERT H. MONTGOMERY, JR., JUDGE